[Cite as *State v. Mitchem*, 2014-Ohio-2366.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130351 |
| | | TRIAL NO. B-1207165 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| MBIYA MITCHEM, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 4, 2014


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*J. Thomas Hodges*, for Defendant-Appellant.


Please note:  we have removed this case from the accelerated calendar.

**FISCHER, Judge**.

{¶1} Defendant-appellant Mbiya Mitchem appeals from the Hamilton County Common Pleas Court's judgment convicting him upon no-contest pleas to carrying concealed weapons in violation of R.C. 2923.12(A)(2) and having weapons under a disability in violation of R.C. 2923.13(A)(3). Mitchem advances on appeal a single assignment of error, challenging the overruling of his motion to suppress the handgun that he was convicted of unlawfully possessing. We affirm the court's judgment.

### Investigation and Arrest

{¶2} Mitchem's weapons charges arose from his encounter with several city of Cincinnati police officers on October 22, 2010. At approximately 12:30 p.m., Officer David Hunter, Jr., responded to a citizen's complaint concerning trespassing at a house on California Avenue in the city's Bond Hill neighborhood. The citizen reported seeing two to three black males in their late teens or early twenties, one in a gray striped shirt and another in a black jacket, "loitering" at a house posted "no trespassing." When the officer arrived, he observed four males sitting on the steps of the house. The officer knew one individual, a 21-year-old man, by name, and he knew a second individual, a boy in his "mid-teens," by a nickname. He did not know the other two individuals.

{¶3} Officer Hunter managed to detain one of the unknown suspects, while the others fled. The officer placed the detained suspect in his cruiser and broadcast the number of the fleeing suspects, the age and race of one of them ("MB 18"), and the name of the suspect that he knew by name. And because the officer knew that the named suspect frequented the 1400 block of the next street over, Carolina

Avenue, the officer also indicated in the broadcast his belief that the fleeing suspects were headed in that direction.

{¶4} Officer Hunter then proceeded to the 1400 block of Carolina Avenue, where, in response to his broadcast, he was joined by Police Sergeant Demeco Anderson and Police Sergeant Shawna Lambert. From where the officers sat, they saw a man, later identified as 35-year-old Mbiya Mitchem, clad in a black shirt and black pants, emerge from between the houses at 1430 and 1434 Carolina Avenue. Officer Hunter told Sergeant Anderson and Sergeant Lambert that the man could "possibly" be one of their suspects and agreed that Sergeant Anderson and Sergeant Lambert "ought to check it out."

{¶5} Sergeant Anderson parked just short of where Mitchem stood on the driveway that ran between the two houses. The officer stepped out of his cruiser and told Mitchem to stop. Mitchem responded, "[Y]ou can't touch me, I'm at my house," and turned toward the steps leading from the driveway to the front porch of 1430 Carolina Avenue. The officer again told Mitchem to stop and asked him to identify himself. Mitchem continued toward, then onto, the steps and then the porch and took a seat there.

{¶6} Sergeant Anderson and Sergeant Lambert followed Mitchem onto the porch. Ignoring further requests by the officers that he identify himself and stand up, and despite Sergeant Lambert's threat to use her stun gun, Mitchem kept his seat and started to light a cigarette. Sergeant Lambert took the cigarette from him, and when he again refused their request that he stand, the officers moved to arrest him for "hindering" their criminal-trespass investigation.

{¶7}   Mitchem forcefully resisted the officers' efforts to arrest him, causing Sergeant Anderson to use his stun gun and to take Mitchem to the ground.  As Mitchem, with one hand at the waistband of his pants, tried with his other hand to take the stun gun from Sergeant Anderson, Sergeant Lambert saw, and alerted Sergeant Anderson to the presence of, a handgun on the porch floor, next to Mitchem's shoulder. Sergeant Lambert's warning prompted Sergeant Anderson to cast aside the stun gun and secure Mitchem's arms, while Sergeant Lambert secured the gun, and a third officer assisted in handcuffing Mitchem.

### *Plain View*

{¶8}   Mitchem moved to suppress the handgun on the ground that its seizure did not comport with the Fourth Amendment to the United States Constitution.  We hold that the trial court properly overruled the motion, because the handgun was properly seized under the plain-view exception to the Fourth Amendment's warrant requirement.

{¶9}   The Fourth Amendment secures the right to be free from an unreasonable search or seizure and requires a warrant to be particular and supported by probable cause.  Evidence derived from a search or seizure that violates the Fourth Amendment is subject to exclusion at trial.  *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶10}  The warrantless seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object could be plainly viewed, (2) the discovery of the evidence was inadvertent, and (3) its incriminating nature was immediately apparent.  *Coolidge v. New Hampshire*, 403

U.S. 443, 465-470, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978), paragraph one of the syllabus.

{¶11} Here, the handgun appeared on the porch floor within Mitchem's reach, as he, with one hand at the waistband of his pants, forcefully resisted the officers' attempts to arrest him. The discovery of the handgun was thus inadvertent, when it came about not in the course of a search for a weapon, but while the officers were attempting to arrest Mitchem for "hindering" their investigation. And the gun's incriminating nature was immediately apparent, when the circumstances under which the handgun appeared provided probable cause to arrest Mitchem for carrying a concealed weapon. *See* R.C. 2923.12(A)(2) (proscribing the act of knowingly having a handgun "concealed on [one's] person or concealed ready at hand"); *State v. Halczyszak*, 25 Ohio St.3d 301, 496 N.E.2d 925 (1986), paragraph three of the syllabus (holding that "[t]he 'immediately apparent' requirement * * * is satisfied when police have probable cause to associate an object with criminal activity").

{¶12} Mitchem contends that the officers, when they saw the handgun, had not attained their vantage point in compliance with the Fourth Amendment. He argues that the police were not acting upon a reasonable suspicion that he was one of the fleeing trespassers, that subsequent events did not provide probable cause for an arrest, and that the officers' entry onto the porch violated the Fourth Amendment. We disagree.

{¶13} *A public place.* The Fourth Amendment, by its terms, protects "the right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures." This protection extends to the area known as the "curtilage" of a home, defined as "the area immediately surrounding and associated with the

home." *Florida v. Jardines*, ___U.S. ___, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013), quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Thus, consistent with the Fourth Amendment, a government official may not effect a search or seizure within the curtilage of a person's home without either a warrant or exigent circumstances. *United States v. Dunn*, 480 U.S. 294, 310-311, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

{¶14} An area is protected under the Fourth Amendment as part of a home's curtilage if "the area harbors the intimate activity associated with the sanctity of a * * * home and the privacies of life." *Id.* at 300, quoting *Oliver* at 180, quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Four factors guide the determination whether an area constitutes a home's curtilage: (1) the area's proximity to the home; (2) how the area is used; (3) whether the area is contained within an enclosure surrounding the home; and (4) the extent to which the area is shielded from observation by people passing by. *Id.* at 301.

{¶15} The front porch of a home has come to be regarded as "the classic exemplar" of an area protected as part of a home's curtilage, because it is "an area adjacent to the home and 'to which the activity of home life extends.' " *Jardines* at 1415, quoting *Oliver* at 182, fn. 12. Here, the evidence adduced at the suppression hearing would not compel a contrary conclusion.

{¶16} The driveway where the police officers first saw and then engaged with Mitchem was also adjacent to his home. But it was not enclosed in a manner that shielded it from the view of the officers. And it was not otherwise shown to "harbor[] the intimate activity associated with the sanctity of a * * * home and the privacies of life." Accordingly, the driveway was not part of the home's curtilage, but instead

constituted a public place. *See State v. Eberhart*, 1st Dist. Hamilton No. C-010346, 2002 Ohio App. LEXIS 1157, ¶ 13 (Mar. 15, 2002) (holding that a traffic stop in defendant's driveway occurred in a "public place" when there was no evidence that the driveway was somehow hidden from public view).

{¶17} ***Reasonable suspicion.*** For purposes of determining the protections afforded by the Fourth Amendment, the United States Supreme Court has identified three categories of police-citizen contacts: (1) a consensual encounter; (2) an investigative, or *Terry*, stop; and (3) a seizure that constitutes an arrest. *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1982).

{¶18} A police officer may, consistent with the Fourth Amendment, stop and briefly detain a person without a warrant, if the officer has a reasonable and articulable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In reviewing a trial court's reasonable-suspicion determination, an appellate court must, first, review the trial court's findings of the "historical facts" for "clear error," giving "due weight" to the inferences drawn by the trial court from those facts, and, second, determine "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion * * *." *Ornelas v. United States*, 517 U.S. 690, 695-700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶19} In the proceedings below, the trial court made no factual findings. But the historical facts material to our analysis here are undisputed: Officer Hunter observed the offense of criminal trespassing and the fleeing suspects; in the course of investigating the offense and pursuing the suspects, the officers alerted to Mitchem because, in race, gender, clothing, and location, he matched the description of the

suspects sought; and Officer Hunter confirmed to Sergeant Anderson and Sergeant Lambert that further investigation was warranted. We conclude, under the totality of the circumstances, that the officers' initial stop of Mitchem in the driveway of his home was undertaken upon a reasonable and articulable suspicion that he had committed the crime of trespassing.

{¶20} *Authority to arrest.* We agree with Mitchem that events subsequent to his initial contact with the police did not give rise to probable cause to arrest him for criminal trespass. Nor did his conduct provide probable cause to arrest him for obstruction of official business in violation of R.C. 2921.31, when the record does not demonstrate that he affirmatively acted with the intent to hamper or impede the officers' trespassing investigation, or that his conduct had that effect. *See State v. Grice*, 180 Ohio App.3d 700, 2009-Ohio-372, 906 N.E.2d 1203, ¶ 9 (1st Dist.) (holding that the mere refusal to produce identification upon the request of a police officer cannot support a conviction for obstructing official business). *Accord State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17; *State v. Vitantonio*, 11th Dist. Lake No. 2012-L-144, 2013-Ohio-4100, ¶ 16.

{¶21} But R.C. Chapter 2921 proscribes "Offenses Against Justice and Public Administration" other than obstruction of official business, including the failure to disclose one's personal information in violation of R.C. 2921.29. R.C. 2921.29(A)(1) provides, in relevant part, that "[n]o person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects * * * [that] [t]he person * * * has committed * * * a criminal offense." Refusing to disclose this information is a fourth-degree misdemeanor. R.C. 2921.29(B). And a law-enforcement officer may arrest a

person who violates the statute in his presence. *See* R.C. 2935.03(A) (permitting a police officer to arrest, and to detain until a warrant can be obtained, any person "found violating" a state law).

{¶22} During his initial contact with the police as he stood in his driveway, Mitchem, while in that public place, refused to identify himself when requested to do so by police officers acting under a reasonable suspicion that he had committed the crime of trespassing. By his refusal, Mitchem violated R.C. 2921.29(A)(1). And because he violated the statute in the officers' presence, the officers were empowered to arrest him.

{¶23} ***Hot pursuit.*** A warrantless entry into a home to effect an arrest violates the Fourth Amendment, unless it is based upon, and within the scope of, a recognized exception to the warrant requirement. *Coolidge*, 403 U.S. at 474-475, 91 S.Ct. 2022, 29 L.Ed.2d 564. "Hot pursuit" provides the exigency justifying a warrantless entry, when a suspect seeks to thwart a lawful arrest by retreating from a public place to a private place. *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976), citing *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

{¶24} The officers' warrantless entry onto Mitchem's front porch implicated the Fourth Amendment, because the porch was part of his home's curtilage. But the driveway was a public place. "Hot pursuit" provided the exigency justifying the entry, because R.C. 2935.03(A) conferred upon the officers the authority to arrest Mitchem for "hindering" their investigation by failing, as required by R.C. 2921.29(A)(1), to identify himself upon request in a public place, and he could not thwart his lawful arrest by retreating from a public place to a private place. *See Middletown v. Flinchum*, 95 Ohio St.3d 43, 45, 765 N.E.2d 330 (2002) (holding that "hot pursuit" constitutes

exigent circumstances even if the offense for which the suspect is being arrested is a misdemeanor). And because the officers' warrantless entry onto the porch to arrest Mitchem was based upon, and within the scope of, a recognized exception to the Fourth Amendment's warrant requirement, the Fourth Amendment was not violated by the officers' seizure of the handgun that appeared in plain view on the porch during the arrest.

## *We Affirm*

{¶25} Thus, the handgun that Mitchem was convicted of unlawfully possessing was not subject to exclusion. The warrantless seizure of the handgun in plain view did not violate the Fourth Amendment, because its discovery was inadvertent, its incriminating nature was immediately apparent, and "hot pursuit" to effect a lawful arrest provided the exigency justifying the warrantless entry onto the front porch, where the handgun appeared in plain view. We, therefore, hold that the trial court properly overruled Mitchem's motion to suppress. Accordingly, we overrule the assignment of error and affirm the court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.