[Cite as *State v. Dixon*, 2015-Ohio-208.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2013-L-103 |
| JAMEY D. DIXON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 13 TRC 02379 A.

Judgment: Reversed and remanded.

*James R. O'Leary,* Baker, Hackenberg & Hennig, 77 North St. Clair Street, #100, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Defendant-appellant, Jamey D. Dixon, aka Peden, appeals the June 17, 2013 judgment entry of the Willoughby Municipal Court, denying her motion to suppress. The issue before this court is whether a police officer may approach a vehicle parked in a residential driveway without a reasonable suspicion that a crime had occurred or was occurring or indications that the operator of the vehicle was in distress. For the reasons that follow, we reverse and remand the judgment of the municipal court.

{¶2} On March 29, 2013, Officer Nate Reed of the Village of Kirtland Hills Police Department issued Dixon a traffic citation, charging her with Operating a Vehicle while under the Influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a) ("[n]o person shall operate any vehicle * * * under the influence of alcohol"), and OVI, in violation of R.C. 4511.19(A)(2) ("[n]o person who * * * previously has been convicted of or pleaded guilty to [OVI] * * * shall do both of the following: (a) Operate any vehicle * * * while under the influence of alcohol * * *; (b) Subsequent to being arrested for operating the vehicle, * * * being asked by a law enforcement officer to submit to a chemical test or tests * * *, refuse to submit to the test or tests").

{¶3} On April 19, 2013, Dixon appeared and entered a plea of not guilty.

{¶4} On May 22, 2013, Dixon filed a motion to suppress.

{¶5} On June 12, 2013, a hearing was held on Dixon's motion.

{¶6} On June 17, 2013, the municipal court issued a judgment entry, denying the motion to suppress. The court made the following findings of fact:

{¶7} "3. Officer Reed testified that he was on duty and on routine patrol on March 29, 2013 when he observed a 'blacked out' vehicle in a residential driveway at 8350 Kingwood Drive. Officer Reed testified that he observed one person in the vehicle, behind the steering wheel. Officer Reed testified that he was familiar with the family that lived at this residence and he had never seen a vehicle parked in the drive such as the defendant was parked, some '65 yards' from the residence. The time was approximately 2:00 AM. Officer Reed explained that what he meant by a 'blacked out' vehicle was one which was occupied but all the lights were out.

{¶8} "4. Officer Reed testified that the area of this particular residence is in close proximity to the intersection of Route 615 and Center Street, a high traffic area

2

compared to the other roadways in Kirtland Hills. He also had knowledge that a vehicle had been broken into previously in this driveway; there was an attempt at unlawful access to the house behind this residence as well as a garage in the area. Under cross examination, the officer testified that the break-ins were not recent, but this does not diminish the fact that he had knowledge of those incidents and that they were in this particular area.

{¶9} "5. Officer Reed testified that based on these specific and articulable facts, he approached the vehicle and made contact with the defendant who was the operator and sole occupant of the vehicle. The officer exercised what he described as his 'community caretaker function', and believed that a criminal act may have taken place or was occurring. His reason to approach the defendant, therefore, was to '… confirm or refute his suspicion of criminal activity.' *State v. Moeller*, 200[0] WL 1577287 (Ohio Ct. App. 12th Dist. Butler County 2000), citing *Terry v. Ohio*, 392 U.S. 1, 21, * * *(1968). The court finds that the state has met its burden to show the factual basis for the stop, as the officer provided specific and articulable facts from which rational inferences could be made to justify the intrusion." (Parallel citations omitted.)

{¶10} On October 2, 2013, Dixon entered a plea of no contest to OVI, in violation of R.C. 4511.19(A)(1)(a). The court imposed a fine of $675, sentenced her to 180 days in jail (165 days suspended), suspended her license for one year, and placed her on probation for one year. On motion of the prosecutor, the court entered a nolle prosequi to the other OVI charge.

{¶11} On October 16, 2013, Dixon filed a notice of appeal.

**{¶12}** On October 17, 2013, the municipal court stayed execution of Dixon's sentence pending appeal.

**{¶13}** On appeal, Dixon raises the following assignment of error:

**{¶14}** "The trial court erred when it denied the defendant-appellant's motion to suppress any evidence gained as part of an unlawful seizure of the defendant-appellant, in violation of her right to due process and to be free from unreasonable search and seizure as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 14 of the Ohio Constitution."

**{¶15}** At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8; *State v. Wysin*, 11th Dist. Portage No. 2013-P-0037, 2013-Ohio-5363, ¶27 "('(o)nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts') (citation omitted)."

**{¶16}** The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[1] "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v.*

---

1. Article I, Section 14 of the Ohio Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized." Except in certain circumstances not relevant here, the Ohio Supreme Court "has interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the Fourth Amendment." *State v. Robinette*, 80 Ohio St.3d 234, 238 (1997).

4

*Ohio*, 392 U.S. 1, 16 (1968). "[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). An action is deemed reasonable under the Fourth Amendment where the totality of the surrounding circumstances, viewed objectively, justifies the action. *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("[a]n action is 'reasonable' under the Fourth Amendment * * * 'as long as the circumstances, viewed *objectively*, justify (the) action'") (citation omitted); *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus ("[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.")

{¶17} There are two well-defined situations in which an officer's seizure of an individual is permissible under the Fourth Amendment: the investigatory stop and the community-caretaking/emergency aid exception.

{¶18} "[A] law enforcement official is permitted to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that 'criminal activity may be afoot' * * *." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶11, quoting *Terry* at 30. "Thus, police officers are generally permitted to approach an individual, even if they have no basis to conclude that he is suspicious, and may ask questions of and request identification from the individual 'as long as the police do not convey a message that compliance with their requests is required.'" *Id.*, quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991).

{¶19} Under the community-caretaking/emergency aid exception to the Fourth Amendment, police officers may "stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious

5

injury." *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, syllabus. The exception recognizes that "local law-enforcement officers 'frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Id.* at ¶17, quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

{¶20} As Ms. Dixon notes in her brief, Officer Reed indicated both that he was making an investigative, *Terry* stop of appellant, and that he was exercising his community-caretaking function. In either case, the facts did not justify him in approaching and questioning appellant, simply because she was stopped on a private driveway at night.

{¶21} If this was a *Terry* stop, then the opinion in *United States v. See*, 574 F.3d 309 (6th Cir.2009), is instructive. In that case, the Northern District of Ohio found a *Terry* stop justified, and denied a motion to suppress, when Officer Williams of the Cuyahoga County Metropolitan Housing Authority, stopped a parked car in the early morning hours at a housing project. *Id.* at 311. On appeal, the Sixth Circuit reversed. *Id.* In relevant part, the court found:

{¶22} "We conclude that this *Terry* stop was not supported by reasonable suspicion. The district court listed the following reasons to support its finding that Williams had reasonable suspicion: (1) it was 4:30 a.m.; (2) the men were parked in a high-crime area; (3) before beginning his shift, Williams had been instructed to pay special attention to non-resident loiterers because of a recent increase in robberies; (4) there were three men in the car; (5) the car's interior light was off; (6) the car was parked away from the apartment building in a dim portion of the lot; and (7) the car did

6

not have a front license plate. Williams' testimony does not provide any additional justifications. Although the fact that the encounter occurred in a high-crime area is relevant, '(a)n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.' *Illinois v. Wardlow*, 528 U.S. 119, 124, * * * (2000); *see also United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006). Similarly, the time of day is relevant, but the fact that it was very early in the morning does not alone provide reasonable suspicion. *Caruthers,* 458 F.3d at 467-68. The first three factors cited by the district court are context-based factors that would have pertained to anyone in the parking lot at that time and should not be given undue weight.

{¶23} "Nor did the remaining factors provide Williams with reasonable suspicion to conduct a *Terry* search (although he could, of course, have pursued a consensual encounter with the occupants of the car). At the time that he parked his patrol car in front of See's car, Williams was not responding to a complaint, he did not suspect the men of a specific crime, he had not seen the men sitting in the car for an extended period of time, he was not acting on a tip, he had not seen the men do anything suspicious, and the men did not try to flee upon seeing Williams approach. Even if we assume that Williams noticed that the car did not have a front license plate before he parked in front of See's car, this fact does not provide reasonable suspicion because, as Williams explained, temporary tags are issued for only the back of the car. Accordingly, the fact that the car did not have a front license plate did not indicate a traffic infraction, and Williams and the government never explain how the lack of a front license plate would otherwise raise reasonable suspicion. Apart from the contextual factors of time and the high-crime status of the area, all that Williams knew at the time he parked his

7

car was that there were three men in an unlit car in the parking lot of a housing complex and that they had not chosen to park in one of the spots closer to the building. Considering the totality of the circumstances, Williams did not have reasonable suspicion that criminal activity was occurring, and the *Terry* stop was therefore improper." *Id.* at 313-314. (Parallel citations omitted.)

{¶24} In this case, Officer Reed based his decision to make a stop solely on the facts that some crimes had occurred in the area; that he had not seen a car parked in the driveway of the house earlier, that he had not seen a car parked at that particular point in the driveway before; and, that its lights were off. The area was not a high crime area; the officer was not responding to a call; he had no suspicion of any traffic infraction or any other criminal activity. In fact, his testimony indicates he did not even know the vehicle was occupied, until he turned his floodlight on it. Ms. Dixon did not attempt to flee. A *Terry* stop was unjustified.

{¶25} If this was a community caretaking stop, again, the facts do not justify the intrusion. As the Supreme Court of Ohio held in *Dunn*, *supra*: "The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury." In this case, no evidence indicates that Officer Reed had any reason to believe Ms. Dixon was in any imminent harm.

{¶26} The sole assignment of error has merit.

8

{¶27} For the foregoing reasons, the judgment of the Willoughby Municipal Court is reversed and this matter is remanded for further proceedings consistent with this opinion.

TIMOTHY P. CANNON, P.J., concurs with a Concurring Opinion,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

Timothy P. Cannon, P.J., concurring.

{¶28} I concur with the majority's decision to reverse the judgment of the trial court, which denied appellant's motion to suppress. I write separately to further address a few points of analysis.

{¶29} First, the dissent states that "Officer Reed's estimation of his own conduct [as 'an investigative, *Terry* stop'] is not material to the issue of its reasonableness. * * * [A]n officer's 'subjective intent is irrelevant to determining the type of intrusion that occurred.'" *Infra* at fn. 1. However, it is undisputed that a seizure occurred here. Officer Reed pulled behind the vehicle and activated his lights. The state of Ohio conceded Ms. Dixon was not free to leave at that point.

{¶30} Second, in support of his seizure of the vehicle, Officer Reed contends he had just passed that drive minutes before and the vehicle was not there. He also testified that Ms. Dixon's vehicle was parked in a driveway near a freeway interchange. However, these facts are consistent with many perfectly legal reasons why anyone may have pulled into the driveway—e.g., place a phone call, check directions on a GPS, or send a text message—activities that are safer to perform when not driving. Although

9

Officer Reed could have observed the vehicle for a period of time to see whether Ms. Dixon may have been performing one of these tasks, he instead made an immediate seizure of the vehicle. Under these facts and circumstances, Officer Reed seized Ms. Dixon before he could have formed a reasonable suspicion of *criminal* activity.

{¶31} Third, Officer Reed identified that something was possibly amiss when he saw Ms. Dixon's car parked at the bottom of a driveway. However, the fact that he may have acted in good faith is simply not enough: "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Beck v. Ohio*, 379 U.S. 89, 97 (1964). There is no doubt that Officer Reed could have pursued a consensual encounter with Ms. Dixon, as it is well settled that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions[.]" *Florida v. Royer*, 460 U.S. 491, 497 (1983). However, as previously stated, the state of Ohio and Officer Reed concede that this was *not* a consensual encounter.

{¶32} I concur with the majority's holding that Ms. Dixon's motion to suppress should have been granted.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting opinion.

{¶33} In the present case, the majority reverses the decision of the lower court on the grounds that Officer Reed's conduct did not constitute a *Terry* stop. I must respectfully dissent. The *Terry* stop is not the only permissible type of encounter

10

between law enforcement and private citizens. By trying to straightjacket the facts of the present case to a *Terry* stop, the majority loses sight of the essence of Fourth Amendment jurisprudence – that the people are to be secure against "**unreasonable searches and seizures**." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ("ultimate standard set forth in the Fourth Amendment is reasonableness"); *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 17 ("the Fourth Amendment protects citizens from only *unreasonable* government searches and seizures") (emphasis sic).

**{¶34}** The question in the present case, then, is not whether Officer Reed's conduct constituted a valid *Terry* stop, but whether it was reasonable in light of the circumstances. Properly framed, the question can only be answered affirmatively, and the lower court's judgment affirmed.[2]

**{¶35}** The nature of Officer Reed's intrusion with regard to Dixon's Fourth Amendment rights must be made clear. A *Terry* stop is a warrantless stop (or seizure) and subsequent frisk (or search) of a person whom the officer lacks probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶36}** At the time of the initial encounter in the present case, Officer Reed had not stopped Dixon's vehicle, restrained her from leaving the scene, or conducted any type of search. Officer Reed observed Dixon's vehicle parked, with its lights out, at the end of a driveway to a private residence, between 65 and 70 yards away from the

---

2. The majority notes that Officer Reed characterized his own conduct as "an investigative, *Terry* stop." *Supra* at ¶ 20. Officer Reed's estimation of his conduct, however, is not material to the issue of its reasonableness. It is fundamental in Fourth Amendment jurisprudence that an officer's "subjective intent is irrelevant to determining the type of intrusion that occurred." *State v. Gill*, 11th Dist. Ashtabula No. 2014-A-0014, 2014-Ohio-4309, ¶ 20. Rather, "[t]he standard for determining the propriety of an officer's actions during an investigatory stop is objective in nature." *Id.* at ¶ 19; *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (rejecting the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved").

11

house, in the early morning hours. There had been a prior incident involving the break-in of a vehicle at this address and an attempted home invasion at an adjoining residence. Officer Reed stopped his patrol car and approached Dixon's vehicle on foot. Upon speaking with Dixon, Officer Reed had reason to believe that Dixon was intoxicated and ordered her out of the vehicle to conduct field sobriety tests.

{¶37} The concurring opinion acknowledges that Officer Reed had reason to believe "something was possibly amiss," but concludes there was no "reasonable suspicion of *criminal* activity." *Supra* at 31. The circumstances of this case do not support such a distinction between criminal activity and something being amiss. That fact that innocent explanations of Dixon's conduct exist is immaterial – innocent explanations are always possible. But to speculate that Dixon may have pulled off the interstate to park at the end of a residential driveway at two in the morning to send a text message is not reasonable or logical.

{¶38} The majority concludes that "[a] *Terry* stop was unjustified." *Supra* at ¶ 24. Given the fact that Officer Reed did not conduct a *Terry* stop, this conclusion is not justification for reversing the lower court. A fair assessment of Officer Reed's conduct is that this was essentially a consensual encounter in a public space.[3] This court has recognized, and repeatedly affirmed, that such conduct does not violate the Fourth Amendment. *State v. Phipps*, 11th Dist. Portage No. 2006-P-0098, 2007-Ohio-3842, ¶ 19 ("the act of a police officer approaching an individual in a parked vehicle and asking him questions does not constitute a 'seizure' for the purposes of the Fourth

---

3. On the character of the driveway for Fourth Amendment purposes, see *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir.2011) ("police officers needed no warrant to enter onto the portion of the driveway [outside the curtilage]"); *State v. Mitchem*, 1st Dist. Hamilton No. C-130351, 2014-Ohio-2366, ¶ 16 ("the driveway was not part of the home's curtilage, but instead constituted a public place"); *State v. Swonger*, 10th Dist. Franklin No. 09AP-1166, 2010-Ohio-4995, ¶ 15 ("the porch of a residence [not within the curtilage] has been held to be a public place for purposes of Fourth Amendment analysis") (cases cited).

Amendment") (cases cited); *State v. Regulus*, 2013-Ohio-507, 986 N.E.2d 1105, ¶ 14 (2nd Dist.); *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 96.

{¶39} Moreover, such conduct is reasonable in light of the facts of this case: prior break-ins at the same and adjoining addresses[4]; the sudden appearance of the car parked suspiciously at the far end of a long driveway; and the late hour of the night. In *Terry*, the United States Supreme Court rejected a "rigid all-or-nothing model of justification and regulation under the [Fourth] Amendment," recognizing, instead, that "the central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Terry*, 392 U.S. at 17-19, 88 S.Ct. 1868, 20 L.Ed.2d 889. The court concluded that "[i]t would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further." *Id.* at 23.

{¶40} It would have been just as poor police work for Officer Reed to have failed to investigate further in the present case, while his decision to investigate is no less constitutional.

---

4. The majority obscures the fact that criminal activity had occurred at this same address, glossing Officer Reed's testimony as "some crimes had occurred in the area."