[Cite as *State v. Evenson*, 2022-Ohio-1336.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210372 |
| | | C-210373 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1805050-A |
| | | B-1806594-A |
| vs. | : | |
| TROY EVENSON, | : | |
| Defendant-Appellant. | : | *O P I N I O N.* |


Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 22, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Kory A. Jackson,* for Defendant-Appellant.

**Bock, Judge.**

{¶1} Defendant-appellant Troy Evenson appeals the trial court's entry denying Evenson's motion to suppress the evidence that was seized on his property, arguing that the search and seizure violated the Fourth Amendment. For the following reasons, we affirm the trial court's judgment.

## I.     Facts and Procedure

{¶2} In August 2018, a representative from Evans Landscaping ("Evans"), contacted Cincinnati police and reported a stolen large piece of equipment ("skid steer"), which had a tracking device on it.

{¶3} About one week later, Evans informed Cincinnati Police Detective Mike Winstead that it had received a signal from the tracking device, which reflected that the skid steer was at 9333 Brehm Road in Colerain Township ("the property"). Winstead verified that the tracking device had "pinged" from the property. Winstead went to the property to conduct a "knock and talk" to find out why the tracking device on a stolen skid steer was pinging from there.

{¶4} The property included a ranch-style home and three storage buildings. There were two connected driveways; one led to the residence and the other was a longer driveway that led to the storage buildings. There were no fences to designate the boundaries of the property.

{¶5} When no one answered the door at the residence, Winstead walked along the longer driveway to each storage building looking for someone working on the property. At the third storage building, he saw "fresh track marks that would be

made by a track-type vehicle similar to what had been described as stolen" leading to the inside of the building.

{¶6} Winstead provided Cincinnati Police Detective Charles Zopfi with the information that he had learned during the "knock and talk." Zopfi obtained a warrant to search the storage buildings for "stolen property, to wit: a Caterpillar, Model 279C, Compact [skid steer], Serial #MBT02804 and any other equipment associated with Evans." (Although police obtained four separate warrants, Evenson does not assert on appeal that the second, third, or fourth were improper.)

{¶7} The affidavit on the search warrant contained the information that officers had received from Evans about its stolen equipment and the tracking device. It described the property, including the appearance of each building, and stated:

> * * * one of these storage building[s] appeared to have fresh marks in the driveway leading to the storage building * * * indicative of a track equipped type vehicle * * * affiant believes that the stolen [skid steer] * * * is being stored in one of the three storage buildings * * *.

{¶8} Once the warrant was granted, officers found a skid steer and a skid loader in a storage building, along with multiple other stolen items in plain view.

{¶9} In September 2018, the state indicted Evenson for possession of cocaine in violation of R.C. 2925.11(A). In November 2018, the state indicted Evenson on six counts of receiving stolen property in violation of R.C. 2913.51(A).

### The Trial Court Denied Evenson's Motion to Suppress

{¶10} Evenson sought to suppress all evidence seized from his property. Following a hearing, the trial court denied Evenson's motion to suppress evidence. The court accepted Zopfi's testimony that Winstead had gone to each of the buildings

3

because he was looking for someone who might be working on the property. After "having no luck" at the first building, Winstead moved on to the other buildings, where he observed the fresh tracks.

**{¶11}** The court noted that Zopfi had also testified that all three storage units were included in the initial search warrant, found the testimony of the officers to be credible, and concluded that the initial search warrant contained sufficient probable cause under the Fourth Amendment.

**{¶12}** Evenson appeals his convictions, limiting his arguments to the propriety of the initial "knock and talk" on his property and to the first search warrant.[1]

## II.     Law and Analysis

**{¶13}** Evenson's sole assignment of error asserts that the trial court erred by denying his motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Landrum*, 1st Dist. Hamilton No. C-180030, 2018-Ohio-4582, ¶ 14. We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts. *Id.*

### A.  Discovery of the Tracks

**{¶14}** Evenson first argues that the search of his property before the initial warrant was unlawful.

**{¶15}** The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, Section 14 of the Ohio

---

[1] Although Evenson lists on this brief only the appellate case numbered C-210372, his arguments cover appellate case number C-210373 as well. Therefore, we consider both cases together.

Constitution contains virtually identical language. *See Ohio v. Jordan*, Slip Opinion No. 2021-Ohio-3922, ¶ 14.

{**¶16**} In *United States v. Hatfield*, 333 F.3d 1189 (10th Cir. 2003), the Tenth Circuit Court of Appeals found that police officers' observations of a back yard from outside of the curtilage—from a paved parking pad next to a house—did not constitute a search under the Fourth Amendment because the driveway was open to the public.

{**¶17**} At common law, the curtilage is the area encompassing the intimate activity associated with the sanctity of a person's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes. *Oliver v. United States*, 466 U.S. 170, 180, 80 L.Ed.2d 214, 104 S.Ct. 1735 (1984). Although privacy in the interior of a home and its curtilage are at the core of what the Fourth Amendment protects, there is no reasonable expectation that a home and its curtilage will be free from ordinary visual surveillance. *Hatfield* at 1196. "The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

{**¶18**} Zopfi testified that Winstead tried the residence and, finding no one there, walked along the longer driveway that connected the storage buildings. He stopped at each storage building in search of someone working on the property. There were no fences or signs prohibiting the public from entering the property.

{**¶19**} Based on *Hatfield*, the discovery of the tracks was not made during a search. We find that the longer driveway was not a part of the curtilage. *See State v. Mitchem*, 1st Dist. Hamilton No. C-130351, 2014-Ohio-2366, ¶ 16; State *v. Peterson*,

5

173 Ohio App.3d 575, 2007-Ohio-5667, 879 N.E.2d 806, ¶ 12-19. It is separate from the driveway leading to the residence. The longer driveway led to three buildings that appeared to be storage units with a plethora of equipment sitting outside. These factors indicate a decreased expectation of privacy. Therefore, Winstead's observation of the tracks on the property was not unlawful.

Open Fields

**{¶20}** In *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), the United States Supreme Court held that police did not violate the defendant's Fourth Amendment rights when they trespassed onto the defendant's farm field that was several hundred feet from the defendant's farmhouse. It noted that a person may not legitimately demand privacy for activities conducted outside, except in the area immediately surrounding the home. *Id.* at 178. It held that open fields do not provide the setting for those intimate activities that the Fourth Amendment is intended to shelter from government surveillance. *Id.* at 179.

**{¶21}** The Supreme Court announced the "open fields" doctrine and determined that the area being searched did not have to be "open" and did not have to be a "field" as those terms are used in common speech. *Id.* at 225, fn. 11.

**{¶22}** In *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the United States Supreme Court upheld a search by two trespassing officers where they stood on the defendant's property outside of a barn, looked in through an open space in the main doorway of the barn, and discovered drug paraphernalia. *Id.* at 304. The Supreme Court first concluded that the barn was not situated within the curtilage of the residence, which was located more than fifty yards from the barn and surrounded by its own fence. *Id.* at 301-303. Thus, the officers were

6

standing upon the defendant's open field and a warrant was not required to justify their presence. *Id.* at 304.

{¶23} The *Dunn* Court emphasized that "the officers never entered the barn, nor did they enter any other structure on respondent's premises." *Id.* Rather, from "their vantage point, they merely stood, outside the curtilage of the house and in the open fields upon which the barn was constructed, and peered into the barn's open front." *Id.* at 1197. Consequently, "standing as they were in the open fields, the Constitution did not forbid them to observe the [drug] laboratory located in respondent's barn." *Id.*

{¶24} Here, it took officers about one to two minutes to walk from the residence to building three. Building one is approximately 40.7 yards from the residence. Building two is approximately 45.3 yards from the residence. Building three is approximately 105.3 yards from the residence.

{¶25} The record does not reflect that any "no trespassing" signs were posted. The 50-acre property, in general, was not enclosed by a fence. Neither the driveway nor the storage buildings were enclosed in a manner that shielded them from public view. *See Mitchem*, 1st Dist. Hamilton No. C-130351, 2014-Ohio-2366 at ¶ 16. And the officers did not enter any buildings before obtaining a warrant.

{¶26} Therefore, we find that there was no reasonable expectation of privacy. *See State v. Bernath*, 3 Ohio App.3d 229, 444 N.E.2d 439 (6th Dist.1981) (a person who surrounds his backyard with a fence, and limits entry with a gate, locked or unlocked, has shown a reasonable expectation of privacy for the area, and it is protected from unreasonable search and seizure by the Fourth Amendment).

{¶27} Further, *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), determined that evidence obtained through unauthorized entry upon open land is admissible. Consequently, it was not illegal for Winstead to walk along the driveway looking for someone who was working. His observation of the tracks on the ground leading into building three was not in violation of the Fourth Amendment.

B. <u>Probable Cause Existed to Support the Search Warrant</u>

{¶28} Crim.R. 41(C) provides:

A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

{¶29} The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures, declaring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *State v. Harrison*, Slip Opinion No. 2021-Ohio-4465, ¶ 12.

{¶30} Only the probability, not a prima facie showing, of criminal activity establishes probable cause. *State v. Smith*, 1st Dist. Hamilton No. C-790423, 1980 Ohio App. LEXIS 10608, *5 (June 11, 1980). Affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. *Id.* In judging probable cause, issuing magistrates are not confined by narrow-minded limitations or by restrictions on the use of their common sense, and their

determinations of probable cause should be granted great deference by reviewing courts. *Id.*

{¶31} In reviewing an affidavit submitted in support of a search warrant, an issuing magistrate must determine whether, under the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Griffin*, 1st Dist. Hamilton No. C-140591, 2015-Ohio-3566, ¶ 18-19.

{¶32} In *State v. Sheets*, 112 Ohio App.3d 1, 677 N.E.2d 818 (4th Dist.1996) the affiant on a search warrant observed videotape of a farm where horses were not being fed by a "reliable individual." The court found that the duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.*, quoting *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. Doubtful or marginal cases are to be resolved in favor of upholding the warrant. *Id.* The court found that the appellant was correct in his observation that the affidavit relied largely on hearsay evidence to establish probable cause, but the court concluded there was a substantial basis for believing the source of the hearsay was credible and that probable cause existed. *Id.*

{¶33} Here, Evans's reporting a tracking device pinging from its stolen equipment at the Evenson property—which Detective Winstead verified—in conjunction with the tracks that were discovered by Winstead during the "knock and talk," provided a substantial basis to believe that there was a fair probability that the stolen equipment would be found on the property.

{¶34} Zopfi confirmed that the Evensons owned the property. The affidavit for the first search warrant explained the events leading up to obtaining the warrant and

it described, in detail, the items for which the officers wished to search and the locations that the officers intended to search.

{¶35} Both the initial "knock and talk" and the first search warrant were lawful. Evenson's sole assignment of error is overruled.

### III. Conclusion

{¶36} We find that the detective's observation of tracks leading into building three did not constitute a search, and therefore, it was not in violation of the Fourth Amendment. We further find that there was sufficient probable cause to obtain the search warrant. The trial court's denial of Evenson's motion to suppress was based on credible, competent evidence. We therefore affirm the trial court's judgment.

Judgment affirmed.

ZAYAS, P.J., and WINKLER, J., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.