OPINION
{¶ 1} Defendant-Appellant Michael Dudley appeals from his conviction for possession of 25-100 grams of crack cocaine. In March, 2006, Dayton Police received a tip about drug trafficking from Dudley's home. During the course of their investigation, police arranged for two controlled buys from occupants of Dudley's home *Page 2 
through a confidential informant, with whom they had been working for two years. The controlled buys occurred on March 27th and April 4th. On April 6th Dayton Police secured a search warrant for Dudley's house and the curtilage of his property.
 {¶ 2} When the police arrived to serve the warrant, the occupants refused to open the door despite repeated knocking and announcement of their presence. The police heard running from inside the house, which they feared could mean that the occupants were arming themselves and destroying evidence. The police broke through the door. Inside, they found two men in the living room. Dudley walked out of the bedroom with small pieces of crack cocaine stuck to his wet hands. In the bathroom the police found a ceramic plate and money in front of the toilet and crack cocaine in the toilet bowl. Dudley denied having been in the bathroom, yet he insisted that the money was his. He also acknowledged that the car in the driveway was his, but he claimed that it did not run.
 {¶ 3} When the police searched the car using keys obtained from Dudley's coat pocket, they found a cell phone charging, and the car started immediately. Thirty-eight grams of crack cocaine were found in the glove box, along with paperwork indicating Dudley's ownership of the car. Dudley was arrested, and a grand jury indicted him on one count of possession of 25-100 grams of crack cocaine. Dudley filed a motion to suppress, which the trial court denied. Dudley pled no contest, and the trial court sentenced him to the mandatory minimum term of three years incarceration. Dudley appeals from the trial court's denial of his motion to suppress.
 I {¶ 4} Dudley's First Assignment of Error: *Page 3 
 {¶ 5} "THE VEHICLE WAS OUTSIDE THE SCOPE OF THE WARRANT, AS BOTH THE VEHICLE AND THE DRIVEWAY WERE OUTSIDE THE CURTILAGE."
 {¶ 6} In his first assignment of error, Dudley argues that the search warrant did not apply to his car because the driveway in which it was parked was outside of the curtilage of his residence. To the contrary, we find that the search of Dudley's vehicle was within the scope of the search warrant.
 {¶ 7} The curtilage of a house is the area immediately surrounding and associated with that residence. United States v. Oliver (1984),466 U.S. 170, 180, 104 S.Ct. 1735. We have previously held that "[a] warrant to search a dwelling and `surrounding curtilage' includes the right to search an automobile parked on the driveway next to the residence."State v. Tewell (1983), 9 Ohio App.3d 330, 460 N.E.2d 285, paragraph one of the syllabus. See, also, State v. Simpson, Montgomery App. No. 19011, 2002-Ohio-1300.
 {¶ 8} Here the search warrant authorized the search of Dudley's residence and the "surrounding common curtilage", which includes the detached garage and driveway behind his house. Whether the driveway ran directly next to the house as in Tewell or behind it, there was no doubt that it was part of Dudley's property. Furthermore, the affidavit for the warrant gave notice of the intent to search the car, as it included the statement that "through my experience, I have found that some operators of drug houses have concealed their drugs, weapons, money and surveillance equipment in the surrounding curtilage of the house, including, but not limited to inside of vehicles sitting on the property. . . ." While the better practice would be to specify the search of the car in the warrant, which would then have covered the car if it had been parked on the street rather than in the driveway, pursuant to our earlier decision in Tewell, supra, it was not necessary that the car be specified in the search warrant.
 {¶ 9} Because we conclude that Dudley's car, parked in the driveway of his *Page 4 
house, was within the curtilage of his residence, and therefore was included within the scope of the search warrant, Dudley's first assignment of error will be overruled.
 II {¶ 10} Dudley's Second Assignment of Error:
 {¶ 11} "THERE WAS NO PROBABLE CAUSE TO SEARCH THE DEFENDANT'S VEHICLE."
 {¶ 12} With no argument in support, Dudley asserts in his second assignment of error that there was no probable cause for the search of his vehicle. Dudley's car was searched pursuant to the authority provided by the search warrant. Therefore, there is no need for us to address this assignment of error because it presents a moot issue. Accordingly, Dudley's second assignment of error will be overruled.
 III {¶ 13} Dudley's Third Assignment of Error:
 {¶ 14} "THERE WERE NO EXIGENT CIRCUMSTANCES THAT WOULD JUSTIFY THE SEARCH OF THE DEFENDANT'S VEHICLE."
 {¶ 15} Dudley premises his third assignment of error on the assumption that the warrant was invalid as applied to his car and argues that there were no exigent circumstances to justify the search of his car. Because we have concluded under Dudley's first assignment of error that the warrant authorized the search of Dudley's car, this argument will also be overruled as moot.
 IV {¶ 16} Dudley's assignments of error having been overruled, the judgment of the trial court will be affirmed.
 GRADY, J. and DONOVAN, J., concur. *Page 1