[Cite as *State v. Griffin*, 2015-Ohio-3566.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                           :          APPEAL NO. C-140591
                                                    TRIAL NO. B-1400363
    Plaintiff-Appellee,              :
                                                       *O P I N I O N.*
  vs.                                    :

MADISON GRIFFIN,                         :

    Defendant-Appellant.             :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, Sentences Vacated
                 and Cause Remanded

Date of Judgment Entry on Appeal:  September 2, 2015


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marguerite Slagle*, Assistant Public Defender, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**Sᴜʟᴠɪᴀ Sɪᴇᴠᴇ Hᴇɴᴅᴏɴ, Presiding Judge.**

{¶1}   Madison Griffin appeals the judgment of the Hamilton County Common Pleas Court convicting him of illegal cultivation of marijuana and possession of marijuana.  Griffin challenges the trial court's denial of his motion to suppress, as well as the court's imposition of multiple sentences for allied offenses.  We affirm the trial court's denial of the suppression motion, but we reverse its judgment with respect to Griffin's sentences.

### *The Search Warrant Affidavit*

{¶1}   Deputy Michael Kane, an 11-year veteran of the Hamilton County Sheriff's Department, sought a warrant to search a residence located at 3021 Cavanaugh Avenue; to search a person named Robin Morgan who was connected to the address; and to search her vehicle.  In his affidavit in support of the warrant, he set forth his experience in drug investigation, including his current assignment as an agent of the Regional Narcotics Unit ("RENU").

{¶2}   In addition, Deputy Kane noted the following facts.  On January 16, 2014, RENU agents had received information from an anonymous complainant indicating that individuals were possibly growing marijuana inside a residence at 3021 Cavanaugh Avenue.  The complainant relayed that he had been inside the residence for a service call and had observed a "large marijuana grow."

{¶3}   On January 25, 2014, Deputy Kane and another officer removed two black trash bags that had been abandoned at the curbside in front of 3021 Cavanaugh Avenue.  He examined the contents of the bags and discovered marijuana and

trimmings from marijuana plants. Also recovered from the trash were articles of mail addressed to Robin Morgan at 3021 Cavanaugh Avenue, Cincinnati, Ohio 45211.

{¶4} Based on Deputy Kane's experience, marijuana plant trimmings were indicative of the cultivation of marijuana. It was his belief that additional marijuana and marijuana plants were located in the residence and that contraband, weapons, or trafficking monies were located in the residence and in a particular vehicle that was parked on the street in front of the residence. The vehicle was registered to Robin Morgan, whose address was listed as 3021 Cavanaugh Avenue, Cincinnati, Ohio 45211.

{¶5} Based on the affidavit, the deputy obtained a search warrant for the residence at 3021 Cavanaugh Avenue, for Robin Morgan's person, and for:

> [A]ny safes or other containers in the residence, locked or unlocked, any outbuildings, garages attached or detached as well as any other structure within the cutilage [sic] or storage container assigned to said residence including any vehicles registered to or in control of Robin MORGAN.

{¶6} A judge of the Hamilton County Municipal Court issued the warrant on January 27, 2014.

### Execution of the Search Warrant

{¶7} Following the issuance of the warrant, RENU agents conducted surveillance on the residence at 3021 Cavanaugh Avenue. According to Deputy Kane, RENU agents would generally wait to execute a search warrant until an occupant left the targeted residence, especially where a vehicle was named as an object of the warrant, so that agents could get a key to the residence. Using this procedure, RENU

agents could avoid being mistaken for intruders and harmed by other occupants or dogs, and the agents could avoid destroying the door to the residence.

{¶8}   On January 28, 2014, RENU agents saw a man, later identified as Griffin, leave the residence and walk over to the vehicle that was specifically identified in the warrant affidavit.  Griffin was at the vehicle briefly, returned to the residence, and then returned to the vehicle.  Griffin entered the driver's seat of the vehicle and drove away.

{¶9}   In a few minutes, Griffin was stopped by police within a mile of the Cavanaugh residence.  Cincinnati police officer Jason Hubbard approached the car, and another officer repeated commands to Griffin to stop reaching and to get out of the car.  But Griffin would not get out of the car.  Officer Hubbard saw Griffin leaning over to his right toward the passenger seat, making a "sort of furtive movement to the right side.  That's all I could see, but I didn't know exactly what he was doing."  Even after officers informed Griffin that they had a warrant to search the car, he refused to comply with their orders to get out of the car.  So officers had to physically remove him.

{¶10}  Officer Hubbard executed the search warrant for the vehicle.  He found a bag of marijuana in the interior of the car in the area where Griffin had been reaching.  He also found paperwork in Griffin's name and Griffin's cell phone.

{¶11}  Officers recovered from Griffin a set of keys that contained a key to the residence at 3021 Cavanaugh, as well as a key to the vehicle that Griffin had been driving.  Griffin informed them that there was a dog at the residence.  Deputy Kane returned with other officers to the residence, where their search revealed marijuana plants in a "marijuana grow," mail addressed to Griffin, and Griffin's birth certificate.

{¶12} Griffin was arrested and charged with illegal cultivation of marijuana, in violation of R.C. 2925.04(A), and possession of marijuana, in violation of R.C. 2925.11(A). He pleaded not guilty to the charges and filed a motion to suppress the evidence that had been seized during the execution of the search warrant.

### *The Trial Court's Findings*

{¶13} Following a hearing, the trial court denied Griffin's motion to suppress. The court found that the searched vehicle had been specifically identified in the warrant affidavit as a vehicle that had been parked at the residence while the officers had had it under surveillance. The court found that the vehicle's license plate number had been identified and that Robin Morgan was its registered owner. In addition, the court determined that the search warrant itself had specifically authorized the search of any vehicles registered to or in control of Robin Morgan.

{¶14} The court noted that Griffin had left the residence, entered the identified vehicle, and driven a short distance before the police seized and searched the vehicle.

{¶15} The court determined that the search of the vehicle was warranted:

> The fact the defendant removed the vehicle from the premises as the warrant was about to be executed doesn't change the officers' right to search it. They could have detained it at the premises. They didn't simply because the officers apparently were not assembled to execute the warrant or because it may have been safer to do it at some distance. But at any rate the vehicle was specifically referenced.

* * *

The warrant also specifically authorized the seizure of keys showing ownership or control of the premises or the vehicle. The keys accessed [were] both permitted to be seized under the warrant.

Taking all of the facts together and under the totality of the circumstances the Court finds there was cause for the stop of [the] vehicle and there was reasonable suspicion to detain the defendant during the course of the search of the vehicle and to arrest him on the finding of contraband being present in the defendant's possession in the vehicle.

{¶16} After the court's ruling on his motion, Griffin entered no-contest pleas to the marijuana charges, both of which were felonies of the fifth degree. The court imposed three years' community control for each offense.

### Probable Cause

{¶17} In his first assignment of error, Griffin argues that the trial court erred by denying his motion to suppress because the search warrant was issued without probable cause. Appellate review of a ruling on a motion to suppress involves mixed questions of law and fact. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* But the reviewing court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*; *State v. Ward*, 1st Dist. Hamilton No. C-140721, 2015-Ohio-2260, ¶ 16.

{¶18} In reviewing an affidavit submitted in support of a search warrant, an issuing magistrate must determine whether, under the totality of the circumstances

set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus. The role of a reviewing court is carefully limited to simply ensuring that the magistrate had a substantial basis for finding that probable cause existed. *Gates* at 238; *George* at paragraph two of the syllabus. An appellate court has a limited role in reviewing the magistrate's probable-cause determination. *George* at paragraph two of the syllabus. The Ohio Supreme Court has stated:

> In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*Id.,* citing *Gates.*

{¶19} In a recent case, the Ohio Supreme Court held that in determining whether probable cause exists to issue a search warrant where a supporting affidavit relies in part on evidence seized from a trash pull, courts must look at the totality of the circumstances. *State v. Jones*, ____ Ohio St.3d ____, 2015-Ohio-483, ____ N.E.3d ____, syllabus. The court held that evidence seized from a single trash pull that corroborated tips and background information involving drug activity was sufficient to establish probable cause for a search warrant. *Id.*

{¶20} In *State v. Jones*, the court reviewed a decision from the Eighth Appellate District that had affirmed the suppression of evidence discovered through

the execution of a search warrant on the ground that it had been issued without probable cause. A trash pull from the residence had corroborated information linking the address to methamphetamine production and distribution from multiple sources. *Jones* at ¶ 18. In a unanimous decision, the Ohio Supreme Court reversed, holding that the contents of a trash pull should have been considered as part of the totality of the circumstances, along with the other information presented in the affidavit accompanying the request for the search warrant. *Jones* at ¶ 15. The court stated:

> [W]hile the Eighth District affirmed the trial court's decision to grant the motion to suppress based upon its determination that the contraband recovered from the trash did not necessarily render the continued existence of methamphetamine at 1116 Rowley probable, an examination of the totality of the circumstances indicates otherwise.

*Id.* at ¶ 17.

{¶21} Therefore, under the totality of the circumstances, the court held, the affidavit had demonstrated probable cause that evidence of a crime would be found at the residence. *Id.*

{¶22} In this case, Deputy Kane's affidavit demonstrated probable cause that contraband or evidence of marijuana cultivation would be found in the residence and in the vehicle parked at the residence. The affidavit described an anonymous tip that there was a large "marijuana grow" in the house, and a trash pull revealed evidence of active marijuana cultivation as well as mail addressed to the owner of the vehicle that was parked at the residence. Following the admonition in *George* that we accord great deference to the issuing magistrate's probable-cause determination and

that we resolve cases in favor of upholding the search warrant, we hold that the search warrant in this case was supported by probable cause and that the trial court properly denied Griffin's motion to suppress. *See George*; *see also Jones* at ¶ 18. Consequently, we overrule the first assignment of error.

### *The Seizure of the Vehicle*

{¶23} In his second assignment of error, Griffin argues that the trial court should have granted his motion to suppress evidence because the seizure of the vehicle exceeded the scope of the search warrant once he had driven away from the residence. Griffin concedes that the search warrant permitted the search of Ms. Morgan's vehicles that were located within the curtilage or property. But he claims that the warrant "was limited to vehicles on the driveway, in the garage, or within the curtilage of 3021 Cavanaugh Avenue."

{¶24} Griffin cites several Ohio cases for the proposition that a warrant to search a dwelling extends to permit the search of motor vehicles located within the curtilage of the premises. *See State v. Dudley*, 2d Dist. Montgomery No. 21781, 2008-Ohio-6545 (search warrant authorizing the search of a residence and the "surrounding common curtilage," extended to a car parked in the driveway); *State v. Williams*, 8th Dist. Cuyahoga No. 88137, 2007-Ohio-3897 (search warrant for the premises, including "curtilage, common and storage areas and persons therein" extended to a car parked in the driveway); *State v. Simpson*, 2d Dist. Montgomery No. 19011, 2002 Ohio App. LEXIS 1310 (Mar. 22, 2002) (search warrant for the premises included a car in an attached garage). But, Griffin contends, a search warrant for a residence does not extend to a vehicle that is parked on a public street. *See State v. Ballez*, 6th Dist. Lucas No. L-10-1012, 2010-Ohio-4720.

{¶25} Of all the cases cited by Griffin, only *Simpson* involved a warrant that identified a vehicle as the object of the search. In *Simpson*, the search warrant had authorized the search of a residence and a particular vehicle, but the warrant had described the area to be searched as including "the described residence and the surrounding curtilage." *Simpson* at *3. The Second District held that the search warrant had extended to a van that was parked in an attached garage, stating, "[T]he search warrant authorized the officers to search both the residence and the curtilage for the marijuana. The vehicle was found inside the residence and the search of it was reasonable."

{¶26} In the case before us, however, the search warrant authorized the search of any vehicles registered to or in control of Robin Morgan regardless of their location. As the trial court noted, the fact that Griffin drove the targeted vehicle away from the premises prior to the execution of the search warrant did not affect the right of police to search it.

*The Detention of Griffin*

{¶27} In his second assignment of error, Griffin also argues that the seizure of his person exceeded the scope of the search warrant. He relies on the United States Supreme Court's decision in *Bailey v. United States*, ____ U.S. ____, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), which addressed the question of whether the Fourth Amendment justifies the detention of occupants beyond the immediate vicinity of the premises covered by a search warrant.

{¶28} In *Bailey*, the court revisited its decision in *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), where it had held that officers executing a search warrant were permitted "to detain the occupants of the premises

10

while a proper search is conducted." The detention was justified by law enforcement interests in officer safety, the efficacy of the search, and the prevention of flight. *Summers* at 702-703. In *Bailey*, the court found that none of those three interests justified the detention of recent occupants beyond the immediate vicinity of the premises to be searched. As a result, the court limited the rule in *Summers* to "those who are present when and where the search is being conducted." *Bailey* at 1040. Consequently, the court held that the seizure of a person was unreasonable when he was stopped and detained at some distance away from the premises to be searched. *Id.* at 1042.

{¶29} *Bailey* is readily distinguishable from the instant case because the "premises to be searched" in that case had consisted solely of a residence. *Id.* at 1036. Therefore, the rule in *Summers* did not apply to allow police to seize Bailey once he had left the "immediate vicinity of a premises to be searched.*" Id.* at 1043. In this case, however, the "premises to be searched" consisted of both a residence *and* vehicles registered to a specific person. So the warrant itself authorized the stop and search of the vehicle, and the rule in *Summers* justified the detention of Griffin as the occupant of that vehicle. We overrule the second assignment of error.

### Griffin's Arrest

{¶30} In his third assignment of error, Griffin argues that the trial court erred in concluding that the police had reasonable suspicion to detain him and probable cause to arrest him based upon the small amount of marijuana found in the car. As we have explained, the detention of Griffin was justified under *Summers*. Moreover, police had probable cause to arrest Griffin because they found him to possess marijuana and keys to the home where marijuana plants and further

evidence tying him to the residence was discovered. We overrule the third assignment of error.

### *Sentencing Errors*

{¶31} In his fourth assignment of error, Griffin argues that the trial court erred by imposing multiple sentences for allied offenses. The state concedes the error. Accordingly, we vacate the sentences for illegal cultivation of marijuana and possession of marijuana, and remand the cause to the trial court so that the state may elect which offense it will pursue against Griffin. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus. In all other respects, the trial court's judgment is affirmed.

Judgment accordingly.

**FISCHER** and **MOCK, JJ.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.