[Cite as *State v. Spradlin*, 2012-Ohio-1211.]

COURT OF APPEALS
LICKING  COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon.  W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon.  John W. Wise, J. |
| | : | Hon.  Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 11 CA 59 |
| JAMES A. SPRADLIN III | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Licking County Court of
                                Common Pleas Case No. 10 CR 337


JUDGMENT:                       REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:         March 12, 2012


APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

BRIAN T. WALTZ                          BRYAN BOWEN
Licking County Assistant Prosecutor     338 S. High St.
20 S. Second St., Fourth Floor          Columbus, Ohio  43215
Newark, Ohio  43055

*Delaney, J.*

{¶1}  Appellant, the State of Ohio, appeals the judgment of the Licking County Court of Common Pleas granting Defendant-Appellee, James A. Spradlin's  motion to suppress evidence obtained during a vehicle stop.  For the reasons that follow, we reverse the trial court's judgment.

{¶2}  Appellant was indicted by the grand jury on July 16, 2010 on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(b), a felony of the third degree. The offense involved Oxycodone, a schedule II drug, involving an amount equal or exceeding the bulk amount but less than five times the bulk amount.

{¶3}  On September 10, 2010, Appellant filed a motion to suppress arguing evidence seized pursuant to a motor vehicle stop was obtained as a result of an unconstitutional stop as the police had no reasonable, articulable suspicion of any criminal activity.  The State did not file a memorandum opposing the motion.

{¶4}  A suppression hearing was held on February 3, 2011.  At the beginning of the hearing, the State argued the motion to suppress should be denied on the following grounds: (1) there was no traffic stop as the Appellant himself stopped the vehicle and then was approached by law enforcement; and (2) the totality of the circumstances supported a reasonable suspicion of criminal activity.

{¶5}  The State called two witnesses to testify: Patrolman Mark Decker and Patrolman Mike Love, both of the Pataskala Police Department.  The Appellant called one witness to testify, Patrolman Alex Colles, also of the same department. The testimony and evidence provided the following information.

{¶6}   Officer Decker testified that around 10:00 p.m., on April 29, 2010, the officers were dispatched to a robbery in progress at 103 Mohican Lane in Pataskala. The house is in a residential subdivision located within a few minutes' drive from the police station.   The subdivision has one main road, Key Boulevard, which provides ingress and egress from the subdivision.   Officers Decker and Love parked a patrol vehicle on Key Boulevard, near Shawnee Loop North, while two other cruisers, one driven by Officer Colles and one driven by Lieutenant Waugh, proceeded to the Mohican Lane address.

{¶7}   Within a few seconds of parking, Officer Decker observed a late model green vehicle, in poor condition, proceed toward them and stop.   Officer Decker saw the passenger in the vehicle slouching down in the seat.   Officer Decker denied that the police car was blocking or in any way impeding the roadway and did not know why the green vehicle stopped.   He also stated the patrol car did not have its overhead lights or sirens activated.   Another vehicle, a brown SUV, also quickly approached behind the green vehicle and stopped behind it.

{¶8}   At that time, Officers Decker and Love were advised via radio by Officer Colles that two cars had just passed him [Officer Colles], a green car with two males in it, and then a brown SUV with a female and a juvenile.   The officers exited their vehicle to separately approach and question the occupants of the two vehicles.   As they were approaching, Officer Decker testified he received a description from Lieutenant Waugh that the robbery suspects were two white males, in a green car that was beat up.   The officers then waved the SUV on, while both officers approached the green vehicle. Officer Decker also was informed that the suspects' names were A.J. Sayers and

James Spradlin. Officer Decker asked the driver for name and identification. The driver said "My name's James Spradlin". Thereafter the officers removed both suspects from the vehicle for officer safety.

{¶9} On cross-examination, Officer Decker admitted that in the police report he stated he intended to stop any traffic leaving the area, even though at the time, he had no description of the robbery suspects or vehicle. He subsequently stated he did not see the green vehicle commit any traffic violations.

{¶10} On re-direct, Officer Decker stated that less than a minute had passed from his approach to the vehicles to receiving the dispatches from Lieutenant Waugh.

{¶11} Officer Love, who at the time was a field training officer, stated that Officer Decker informed him to get out of the patrol car when they observed the green vehicle stop and to make contact with the occupants. Officer Love testified they did not stop the vehicle. On cross-examination, Officer Love admitted his report stated that "We spotted a car leaving the area, so Patrolman Decker blocked the exit off". On redirect, Officer Love stated the patrol car was parked on the wrong side of Key Boulevard, so the green vehicle stopped heading toward their vehicle. However, he subsequently clarified that the road was wide enough for two lanes of travel and a parking lane, which was where the patrol car was parked.

{¶12} The trial court questioned Officer Love as to when the patrol car parked to when the green car stopped and Officer stated it was "seconds, maybe thirty at the max."

{¶13} Officer Colles was called by the defense and he testified he was the lead vehicle into the subdivision, travelling without overhead lights and sirens, and passed

the green vehicle as he was traveling on Key Boulevard. Once he heard Lieutenant Waugh's description of the green vehicle he turned around and headed back to Officer Decker's location. He stated their cruiser was either parked at an angle or was parked in front of the green vehicle, and possibly blocking it in. He parked his patrol car in a position to further block the green's vehicle exit. At that point, Officers Decker had the driver of the vehicle at gun point outside the vehicle.

{¶14} Via judgment entry of May 27, 2011 the trial court granted the motion to suppress finding no reasonable suspicion of criminal activity to stop the vehicle and thus, the stop was impermissible under the Fourth Amendment.

{¶15} The State of Ohio now appeals, and raises two Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED IN FINDING THAT THE ENCOUNTER BETWEEN THE APPELLANT AND THE OFFICERS WAS NOT CONSENSUAL.

{¶17} "II. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS NOT A REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY SUCH THAT THE OFFICERS COULD STOP THE DEFENDANT'S VEHICLE.

I.

{¶18} In its first assignment of error, the State argues that the trial court erred in its determination that the officers actually stopped Appellant's vehicle.

{¶19} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71at ¶ 8.

{¶20} In this case, the trial court issued written findings of fact. The trial court specifically found that Officer Decker's vehicle "blockaded the intersection that was the only way into or out of the portion of the subdivision where the residence was located" and "[b]ecause of how the cruiser was positioned, the green car could not proceed through the intersection so it came to a stop and remained there." The trial court thereafter concluded the initial interaction between the Appellant and the police was a police initiated seizure, not a consensual encounter.

{¶21} The U.S. Supreme Court articulated the constitutional standard governing warrantless investigative stops in *Terry v. Ohio* (1968), 392 U.S. 1. The *Terry* Court ruled that under appropriate circumstances, an officer may "approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. However, the Court held that an officer must rely upon reasonable, articulable facts and inferences indicating that criminal activity is in progress or is about to be committed. Otherwise, a stop or seizure constitutes a violation of the suspect's Fourth Amendment rights.

{¶22} Reviewing courts must look at the totality of the circumstances of each case to see whether the detaining officers had a particularized and objective basis for suspecting legal wrongdoing. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), at syllabus one.

{¶23} A consensual encounter can ripen into a seizure if in light of the all the circumstances, a reasonable person would have believed that he or she was not free to leave. *U.S. v. Mendenhall* (1988), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.

{¶24} The parties argue whether the interaction between the officers and the Appellant was a stop or a consensual encounter. There is a factual dispute as to whether Officers Decker and Love parked their patrol car in a manner which blocked Appellant's path on Key Boulevard or whether Appellant voluntarily stopped his car. The trial court, being in the best position to observe the witnesses' testimony and determine their credibility, concluded the patrol car blocked Appellant's car from exiting the subdivision.

{¶25} Upon review of the record, we find there was competent, credible evidence that the patrol car's position prevented Appellant from proceeding in his lane of travel on Key Boulevard, resulting in a *Terry* stop.

{¶26} The first Assignment of Error is overruled.

II.

{¶27} In its second assignment of error, the State argues the trial court erred in its determination that the officers lacked reasonable, articulable suspicion to stop the vehicle.

{¶28} Based upon the testimony, the trial court determined that Officer Decker received information about the description of the vehicle and the robbery suspects subsequent to the vehicle stop. In addition, there were no driving infractions or equipment defects that would have supported the stop of the vehicle.

{¶29}  The State argues the close proximity of the stop to the criminal activity, the poor condition of the green car (which was out of the ordinary for the neighborhood) and the slouching passenger combined to form a reasonable suspicion that the Appellant was engaged in criminal activity.

{¶30}  The "totality of the circumstances" in this case consists of a limited set of facts occurring rapidly within a few minutes.  We conclude that these facts, when viewed in total and taken together with rational inferences from those facts, create a reasonable and articulable suspicion that criminal activity was afoot and warranted the brief traffic stop.  Here, the officers arrived quickly to the neighborhood, with only one main road providing ingress and egress, a robbery occurring at a specific residence and information identifying the suspected vehicle and persons quickly conveyed to Officers Decker and Love who stopped Appellant's vehicle almost immediately upon arrival, all support a finding that the stop was reasonable.

{¶31}  Accordingly, the second Assignment of Error is sustained.

{¶32} The judgment of the Licking County Court of Common Pleas is reversed and this matter is remanded for further proceedings.

By: Delaney, J.

Wise, J. concur.

Gwin, P.J. concurs separately

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

*Gwin, J., concurring*

{33}    I respectfully concur in the disposition of appellant's Second Assignment of Error; however, I do so for the reasons that follow.

{34}    The Fourth Amendment protects individuals "against unreasonable searches and seizures." Fourth Amendment to the U.S. Constitution. "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing," such as in cases in which the "primary purpose of the [seizure] is ultimately indistinguishable from the general interest in crime control." *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 48, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

{35}    The stop of a vehicle at a roadblock on a public thoroughfare is clearly a seizure within the meaning of the Fourth Amendment. *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). In *City of Indianapolis v. Edmond,* 531 U.S. 32, 37, 121 S.Ct. 447 148 L.Ed.2d 333 (2000) the Court held that, absent special circumstances, the Fourth Amendment forbids police to make stops without individualized suspicion at a checkpoint set up primarily for general "crime control" purposes. 531 U.S. at 44, 121 S.Ct. 447. Specifically, the checkpoint in *Edmond* was designed to ferret out drug crimes committed by the motorists themselves. However, the Court noted that there are exceptions to the "individualized suspicion" requirement,

{36}    The Fourth Amendment requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller*, 520 U.S. 305, 308 [117 S.Ct. 1295, 137 L.Ed.2d 513] (1997). While such suspicion is not an "irreducible" component

of reasonableness, [United States v.] Martinez–Fuerte, 428 U.S., [543,] 561 [96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976)], we have recognized only limited circumstances in which the usual rule does not apply. For example, we have upheld certain regimes of suspicionless searches where the program was designed to serve "special needs, beyond the normal need for law enforcement." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 451, 148 L.Ed.2d 333 (2000).

{37} In *Edmond,* the Supreme Court held that roadblocks set up for the primary purpose of investigating general criminal conduct were not constitutional under the Fourth Amendment. *Edmond,* 531 U.S. at 43-44. Relevant to the case sub judice however, the Supreme Court also emphasized an exception to the general prohibition against roadblocks, stating that "the Fourth Amendment would almost certainly permit an appropriately tailored roadblock set up ... to catch a dangerous criminal who is likely to flee by a particular route." *Id.* at 44.

{38} The roadblock at issue in the case at bar differs significantly from a roadblock stopping all motorists on an ordinary public thoroughfare. In the case at bar, because of the position of the roadblock, only vehicles attempting to leave the subdivision were stopped. Clearly, the momentary stop of individual vehicles on the only main thoroughfare into and out of an area where a robbery had only moments ago occurred is the type of exception the Supreme Court had in mind in *Edmond.*

{39} We also find instructive the Supreme Court's decision in *Illinois v. Lidster,* 540 U.S. 419, 424, 124 S.Ct. 885, 157 L.Ed. 2d 843 (2004), which held that the police did not run afoul of the Fourth Amendment by stopping motorists at a highway checkpoint to ask them about a fatal hit-and-run accident that had taken place a week

earlier on that highway, notwithstanding the lack of individualized suspicion. 540 U.S. at 423, 124 S.Ct. 885. *Lidster,* like the case at hand, involved law enforcement's need to acquire information about a recent crime that had occurred in the vicinity.

{40} The *Lidster* court noted that "the fact that they [roadblocks] normally lack individualized suspicion cannot by itself determine the constitutional outcome, as the Fourth Amendment does not treat a motorist's car as his castle, see, *e.g., New York v. Class,* 475 U.S. 106, 112–113, 106 S.Ct. 960, 89 L.Ed.2d 81, and special law enforcement concerns will sometimes justify highway stops without individualized suspicion. In judging its reasonableness, hence, its constitutionality, the Court looked to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed. 2d 357. *Lidster,* 540 U.S. 426-427, 124 S.Ct. 885, 157 L.Ed. 2d 843.

{41} The information known to Officers Decker and Lowe consists of the following facts. The area in question is approximately two (2) blocks from the police station. (T. at 11; 47). The dispatched reported a robbery "in progress." (Id.). Only one main road provided ingress and egress to the subdivision; a late model green vehicle in poor condition and a brown SUV had been reported leaving from the area within the subdivision where the robbery had occurred; both vehicles approached the area where the officers had parked their police car; both vehicles stopped. Officer Love approached the passenger side of the vehicle, informed them that a robbery had occurred and asked them to identify themselves. (T. at 34; 39). Within seconds, Officer received a radio transmission relaying a description of the vehicle, the description of the vehicle

and the names of the suspected robbers. (T. at 18-19; 28-29; 55-56). These descriptions matched the green vehicle and its occupants.

{42}    Rather than the purely "information-seeking" traffic stop as in *Lidster,* in the case at bar the police had reason to believe that a vehicle leaving the subdivision may included the perpetrators of the robbery. Moreover, unlike *Lidster,* in which the traffic stop took place a week after the accident being investigated, the roadblock in this case took place immediately after the robbery; thus the urgency for immediate police action was substantially greater in the case at bar than in *Lidster*.

{43}    In considering the severity of the intrusion on individual liberty, the court must consider both the objective intrusion of the seizure—the duration of the stop and the intensity of any brief questioning and visual inspection that might attend it—and its subjective intrusion—its potential for generating fear and surprise to law-abiding motorists. *Sitz*, 496 U.S. at 451, 110 S.Ct. 2481. As explained by the Court in *Brown v. Texas*, the purpose in weighing these three factors is to "assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." 443 U.S. at 51, 99 S.Ct. 2637.

{44}    In the case at bar, the need to capture a violent felon serves a public concern of sufficient gravity that a carefully limited interference with personal liberty is warranted. No one denies the police's need to obtain more information at that time. In addition, the stop's objective was to help find the perpetrator of a specific and known crime, not of unknown crimes of a general sort. *Lidster,* 540 U.S. at 427, 124 S.Ct. 885, 157 L.Ed. 2d 843. Thus, in the present case, the first factor in *Brown* weighs in favor of the reasonableness of the law enforcement agent's exercise of discretion.

**{45}** The second factor in *Brown* weighs the degree to which the seizure advances the public interest. In this case because of the position of the roadblock, only vehicles attempting to leave the subdivision were stopped. The police appropriately tailored their roadblock to fit important criminal investigatory needs. Further, the law ordinarily permits police to seek the voluntary cooperation of members of the public in the investigation of a crime. *Lidster,* 540 U.S. at 425, 124 S.Ct. 885, 157 L.Ed. 2d 843. This is true for both pedestrians and motorists alike. Id. at 426, 124 S.Ct. 885, 157 L.Ed.2d 843.

**{46}** Most importantly, the stops interfered only minimally with liberty of the sort the Fourth Amendment seeks to protect. Viewed objectively, the stop required only a brief wait in line—a very few minutes at most. Contact with the police lasted only a few seconds. *Lidster,* 540 U.S. at 427, 124 S.Ct. 885, 157 L.Ed. 2d 843.

**{47}** In sum, I find that the three-part *Brown* balancing test clearly weighs in favor of the officers' actions in stopping the vehicle. For these reasons, I conclude that the stop was constitutional.

_____
HON. W. SCOTT GWIN

[Cite as *State v. Spradlin*, 2012-Ohio-1211.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAMES A. SPRADLIN III | : | |
| | : | |
| Defendant-Appellee | : | Case No. 11 CA 59 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed and this matter is remanded for further proceedings. Costs assessed to Appellee.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE