[Cite as *State v. Cunningham*, 2015-Ohio-4306.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0032-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SETH CUNNINGHAM | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 12 CR 0275 |

DECISION AND JOURNAL ENTRY

Dated: October 19, 2015

---

SCHAFER, Judge.

{¶1} Appellant-Defendant, Seth Cunningham, appeals from his conviction in the Medina County Court of Common Pleas. For the following reasons, we reverse.

I.

{¶2} At approximately 12:17 a.m. on the morning of May 13, 2013, Officer Samuel Gagliardi of the Brunswick Police Department received a call concerning an armed robbery. Officer Gagliardi learned that a male subject, approximately five feet eight inches tall, wearing a camouflage jacket and a ski mask, brandished a black handgun at the Twilight Boutique, a smoke shop located at the Archway Plaza in Brunswick, Ohio. The suspect reportedly fled on foot with a glass water bong valued at nearly $500.00.

{¶3} Officer Gagliardi responded to the call and searched behind the plaza, but was unable to locate a suspect. He then searched a residential neighborhood located directly behind the plaza. Within five minutes, Officer Gagliardi observed a black truck turn abruptly into the

first driveway on Clemson Drive, less than one-quarter mile from the scene of the robbery. The truck was parked at the end of the driveway with half of the vehicle extending over the sidewalk. Officer Gagliardi, who patrolled this neighborhood on a nightly basis and was particularly familiar[1] with the residence where the truck was parked, testified that he had not previously seen a black truck parked in front of that house. As Officer Gagliardi drove towards the truck, he was able to run a background check of its license plate and learned that the vehicle was registered to an individual named Seth Cunningham who had an address in Medina, Ohio. Officer Gagliardi drove past the driveway, stopped at a stop sign, and continued to observe the truck for an unknown period of time through his rearview and side mirrors. He never saw anybody exit the truck. Officer Gagliardi then turned around, drove back towards the driveway in question, and parked his marked cruiser behind the truck.

{¶4} Officer Gagliardi subsequently exited his cruiser and approached the truck. The truck's headlights were turned off. Because the driver-side and passenger-side windows were tinted, he was unable to see inside the vehicle. He then approached the front of the truck and observed through the windshield a male subject with short hair. The male, later identified as Mr. Cunningham, was slouched down in the driver's seat, which Officer Gagliardi interpreted as him trying to avoid detection. Officer Gagliardi then pulled his service firearm and ordered Mr. Cunningham to show him his hands. The officer subsequently opened the passenger-side door to the truck and observed a camouflage jacket beneath Mr. Cunningham, a large glass bong on the passenger-side floorboard, and a handgun resting on the passenger seat.

---

[1] Officer Gagliardi testified that he observed this residence on occasions prior to May 13, 2013 because he had been interested in purchasing the house when it was previously on the market.

{¶5} Officer Gagliardi removed Mr. Cunningham from the truck and placed him in handcuffs. As Mr. Cunningham was in the process of being handcuffed, Officer Gagliardi asked him if there was any contraband in the truck, to which Mr. Cunningham stated that there was a bong. Officer Gagliardi also asked if the bong was taken from Twilight Boutique, to which Mr. Cunningham answered in the affirmative. Officer Gagliardi then read Mr. Cunningham his *Miranda* rights. Afterwards, Officer Gagliardi asked Mr. Cunningham whether there was a gun in the truck, to which Mr. Cunningham stated that there was a 9-millimeter handgun.

{¶6} Officer Gagliardi proceeded to place Mr. Cunningham in the back seat of the police cruiser where he was *Mirandized* for a second time. While in the cruiser, Mr. Cunningham confessed to entering the Twilight Boutique, brandishing a firearm, grabbing a bong from a glass showcase, and fleeing on foot. Mr. Cunningham further told Officer Gagliardi that he ran to his truck, which was parked across the street from the plaza. Mr. Cunningham also stated that he waited in his truck and did not drive away until he thought that the police had left the boutique. Later at the police station, Mr. Cunningham was *Mirandized* for a third time and he also signed a Rights Waiver Form before providing the police with additional information regarding the robbery.

{¶7} The Medina County Grand Jury subsequently indicted Mr. Cunningham on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, with two firearm specifications as outlined in R.C. 2941.141(A) and R.C. 2941.145(A), respectively. Mr. Cunningham initially pled not guilty and filed a motion to suppress arguing that Officer Gagliardi lacked both a reasonable, articulable suspicion to initiate an investigative stop and probable cause to make an arrest. Additionally, Mr. Cunningham argued that his statements during his arrest should be suppressed because he was not properly informed of his *Miranda*

rights. The trial court held a suppression hearing on the motion where it heard testimony from Officer Gagliardi and Officer Jeremy Puhac of the Brunswick Police Department. The trial court partially granted the suppression motion as to the statements that Mr. Cunningham made prior to receiving his first set of *Miranda* warnings, but denied the remainder of the motion.

{¶8} On the morning that trial was set to begin, Mr. Cunningham withdrew his not guilty plea and entered a plea of no contest to the charges contained in the indictment. In exchange for his change of plea, the State recommended that Mr. Cunningham receive a six-year prison sentence, the minimum possible sentence. On April 14, 2014, the trial court sentenced Mr. Cunningham to three years for the aggravated robbery and three years for the firearm specification as outlined in R.C. 2941.145(A) and ran those sentences consecutively, for a total of six years in prison. The State dismissed the remaining firearm specification charge.

{¶9} Mr. Cunningham filed a timely appeal, raising two assignments of error for review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT'S MOTION TO SUPRESS ALL OF THE EVIDENCE WHERE, CONTRARY TO THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION, THE POLICE OFFICER (1) SEIZED AND ARRESTED THE DEFENDANT AT GUNPOINT WITHOUT A WARRANT AND WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE; AND (2) OPENED THE DOOR OF DEFENDANT'S VEHICLE WITHOUT A WARRANT AND WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE.

{¶10} In his first assignment of error, Mr. Cunningham argues that the trial court erred by denying his motion to suppress. Specifically, Mr. Cunningham contends that the police

lacked both a reasonable, articulable suspicion and probable cause to seize or arrest him at gunpoint or to search his truck. We agree.

{¶11} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).

{¶12} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures by the government. *State v. Orr*, 91 Ohio St.3d 389, 391 (2001). These two provisions contain nearly identical language and the Supreme Court of Ohio has interpreted them as affording the same level of protection. *Id.* Once a defendant demonstrates that he was subjected to a warrantless search or seizure, the burden then shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. *Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999); *Xenia v. Wallace,* 37 Ohio St.3d 216 (1988), paragraph two of the syllabus.

{¶13} However, before an officer's actions will be scrutinized under the Fourth Amendment, it must be shown that the individual was "seized." *Terry v. Ohio*, 392 U.S. 1 (1968). This is because not all interactions between police officers and citizens involve seizures

of persons. *Id*. at 19, fn. 16. Rather, "[a] police officer may approach an individual in what is known as a consensual encounter, which is not a seizure for Fourth Amendment purposes." *State v. Barth*, 11th Dist. Lake No. 99-L-058, 2000 WL 714406 (June 2, 2000), * 2, citing *Florida v. Bostick*, 501 U.S. 429 (1991).

{¶14} Here, Officer Gagliardi testified at the suppression hearing that Mr. Cunningham was not free to leave from the moment he pointed his service firearm at him and ordered him to exit the truck. However, an officer's subjective intent to detain a suspect is not controlling. Rather, the court must determine whether, under the circumstances, a reasonable person would feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Certain factors, such as blocking the path of the suspect and drawing a weapon, indicate that a seizure has occurred. *State v. Bennett*, 4th Dist. Ross No. 99 CA 2509, 2000 WL 821616 (June 21, 2000), * 5, citing 4 Wayne R. LaFave, *Search and Seizure*, Section 9.3(a), at 102-104 (3d Ed.1996).

{¶15} In the present case, Officer Gagliardi parked his cruiser behind Mr. Cunningham's truck and, upon seeing Mr. Cunningham slouching down in the driver's seat, withdrew his service firearm, pointed it at Mr. Cunningham, and ordered him to exit the truck. We determine that a reasonable person in Mr. Cunningham's position would not have felt free to leave. Mr. Cunningham was therefore seized.

{¶16} Based on the State's argument on appeal, the stop at issue in this case is an investigative stop subject to Fourth Amendment jurisprudence. The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry,* 392 U.S. at 30.

{¶17} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers. *Illinois v. Wardlow*, 523 U.S. 119, 125 (2000). Instead, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior." *Id.* Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizui* at 274. The Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [upon an individual's freedom of movement]." *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988), quoting *Terry* at 21. In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances. *Id*. at paragraph two of the syllabus.

{¶18} Viewing the circumstances of this case through the eyes of Officer Gagliardi, an officer with eight years of law enforcement experience, we cannot conclude that articulable facts existed to support seizing Mr. Cunningham. Officer Gagliardi's basis for seizing Mr. Cunningham involved the fact that a black truck abruptly turned into a driveway a short time after a reported aggravated robbery, the truck was located roughly one-quarter mile away from the scene of the crime, and the male driver was observed slouching in the driver's seat. However, the only information concerning the robbery that Officer Gagliardi possessed at the time he approached Mr. Cunningham's truck was that the suspect was a five foot eight inch tall male who wore a camouflage jacket and a ski mask. The only similarity between this description of the robbery suspect and Mr. Cunningham at the moment of the seizure was the fact that Mr.

Cunningham was a male. Stated differently, Officer Gagliardi knew *nothing* connecting the driver of the black truck to the robbery at the time that he pointed his firearm at Mr. Cunningham and ordered him from the vehicle. To adopt the State's position in this case would, in essence, permit law enforcement officers to seize any individual located within close proximity to a recent crime scene for no other reason than the fact that he is of the same gender as the suspect. We emphatically refuse to go down that path.

{¶19} We similarly find that Mr. Cunningham's conduct while in the driveway does not raise an inference of criminal activity. Ignoring the fact that a whole host of innocent explanations could account for such behavior, the State's argument is belied by Officer Gagliardi's own testimony. At the suppression hearing, Officer Gagliardi testified that when he first approached the truck on the driveway and observed a male subject slouching in the front seat, he "was unsure if this was the suspect that just robbed the [Twilight Boutique] at gunpoint or somebody that was passed out, you know, got home drunk and was passed out."

{¶20} Later, when discussing his thought process when he first observed the truck turn into the driveway, Officer Gagliardi stated:

> [The person driving the truck] could be either the [robbery] suspect, it could be somebody there to rob the house, it could be someone who had just gotten home drunk, you know, and was passed out at the wheel. I was unsure at that time. * * * There could be a medical issue as well.

This testimony does not implicate the presence of an articulable, reasonable suspicion. Rather, Officer Gagliardi's testimony reveals an officer with a hunch, or gut instinct, that the driver of the black truck was responsible for robbing the Twilight Boutique. A *Terry* stop was therefore unjustified under the facts and circumstances of this case.

{¶21} We think the facts of this case are comparable to the facts presented in *State v. Dixon*, 11th Dist. Lake No. 2013-L-103, 2015-Ohio-208. There, a police officer observed a

woman, later identified as Jamey Dixon, sitting in a "blacked out" vehicle in a residential driveway at 2:00 a.m. The officer testified that he was familiar with the family that lived at the residence, and that he had never seen the vehicle that was parked roughly 65 yards away from the residence, as Ms. Dixon's vehicle was. The officer also testified that the residence, which was in close proximity to a high traffic area, had been broken into in the past. With this information, the officer approached the vehicle and made contact with Ms. Dixon to either confirm or refute his suspicion of criminal activity. This encounter resulted in the officer citing Ms. Dixon with Operating a Vehicle while under the Influence.

{¶22} On appeal, the State argued that the officer's stop of Ms. Dixon was consistent with the Fourth Amendment under the investigatory stop exception. The Eleventh District Court of Appeals disagreed, however, and concluded that the facts did not justify the officer approaching and questioning Ms. Dixon, simply because she was parked on a private driveway at night. *Id*. at ¶ 20. In making this determination, the *Dixon* court reasoned that the officer's decision to stop Ms. Dixon was based:

> [S]olely on the facts that some crimes had occurred in the area; that he had not seen a car parked in the driveway of the house earlier, that he had not seen a car parked at that particular point in the driveway before; and, that its lights were off. The area was not a high crime area; the officer was not responding to a call; he had no suspicion of any traffic infraction or any other criminal activity. * * * Ms. Dixon did not attempt to flee.

*Id*. at ¶ 24. Likewise, in the instant case, Officer Gagliardi seized Mr. Cunningham simply because Mr. Cunningham was sitting in a "blacked out" truck late at night, the officer did not recognize the truck as belonging at the residence where it was parked, and a robbery had been reported nearby. Similar to *Dixon*, the neighborhood where Mr. Cunningham was parked was not a high crime area, Mr. Cunningham did not attempt to flee upon being approached by Officer

Gagliardi, and, per Officer Gagliardi's own testimony, Mr. Cunningham was not stopped for committing a traffic violation.

{¶23} The State cites to *Andrews* in support of its contention that a vehicle, "sitting alone in a parked car late at night in an unusual location—combined with other factors such as the time of night—can provide reasonable suspicion for a *Terry* stop." However, the facts of *Andrews* are starkly different from this matter, which renders it inapposite here. First, the locations of the seizures were entirely different. In *Andrews*, a 12-year police veteran, patrolling an area with high drug activity and weapons-related crimes, seized a man in a dark courtyard who was suspected of fleeing from another police officer. Conversely, here, the neighborhoods in close proximity to the Twilight Boutique are not known for being a high crime area. Second, unlike the defendant in *Andrews*, Mr. Cunningham was sitting in his truck for a short period of time prior to being detained and did not attempt to flee from Officer Gagliardi once contact was established. The State's other cases cited in support of their argument are also distinguishable from the present case. *Compare State v. Freeman*, 64 Ohio St.2d 291, 295 (1980) (*Terry* stop deemed proper where an officer observed a man sitting alone in running vehicle for 20 minutes at 3:00 a.m. outside of a motel located in a high crime area, with the officer being aware of recent criminal activity in that same motel parking lot); *State v. Jones*, 9th Dist. Lorain No. 98CA007068, 1999 WL 247342 (Apr. 28, 1999) (*Terry* stop deemed appropriate where officers, patrolling a development for trespassers, observed a man enter a vehicle matching the description of a vehicle driven by an individual without outstanding arrest warrants and is unable to exit through the exit gate.). In sum, the State has failed to provide us with on-point case law that could allow us to give our imprimatur to the seizure in this matter.

**{¶24}** Accordingly, for the reasons stated above, Mr. Cunningham's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT'S MOTION TO SUPPRESS ALL OF THE POST-*MIRANDA* STATEMENTS, WHERE THE OFFICER FIRST QUESTIONED THE DEFENDANT AND OBTAINED A CONSTITUTIONALLY INVALID CONFESSION BEFORE SUBSEQUENTLY ADVISING DEFENDANT OF HIS *MIRANDA* RIGHTS.

**{¶25}** In Mr. Cunningham's second assignment of error, he argues that the trial court erred by not suppressing his post-*Miranda* statements. Specifically, Mr. Cunningham contends that the second and third set of *Miranda* warnings failed to effectively provide him with a fair warning of his constitutional right to remain silent. Given our resolution of Mr. Cunningham's first assignment of error, this assignment of error is moot. *See* App.R. 12(A)(1)(c).

## III.

**{¶26}** Mr. Cunningham's first assignment of error is sustained, and his second assignment of error is moot. The judgment of the Medina County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JULIE A. SCHAFER
FOR THE COURT

MOORE, J.
CONCURS IN JUDGMENT ONLY.

CARR, P. J.
DISSENTING.

{¶27} I respectfully dissent from the majority's resolution of this appeal, because I would overrule the first assignment of error and sustain the second.

{¶28} With regard to the first assignment of error, I would conclude that Officer Gagliardi had a reasonable, articulable suspicion of criminal activity, justifying his seizure of Cunningham. The officer was aware of a recent armed robbery of a bong in the vicinity and, while on the lookout for suspects, witnessed Cunningham's vehicle make an abrupt turn partially into a driveway and remain there. As Cunningham's vehicle continued to straddle the sidewalk in violation of the traffic code, the officer had reasonable suspicion to conduct an investigatory stop. There is no requirement under the law that an officer have reasonable suspicion of all

criminal activity which may be afoot before conducting a stop. He need only have a reasonable, articulable suspicion of some type of criminal activity.

{¶29} Upon approaching the vehicle, Officer Gagliardi saw the driver shrink down in his seat as if to avoid detection, an indication that the driver may have been attempting to shield illegal activity. Knowing that an armed robbery had very recently occurred in the vicinity, the officer acted reasonably in drawing his weapon and ordering Cunningham to exit the vehicle in the interest of officer safety. Upon opening the vehicle's door, the officer observed a handgun, a bong, and a camouflage jacket similar to the one the perpetrator was described to have worn during the robbery, all in plain view. Under these circumstances, the officer had probable cause to arrest Cunningham. Based on my review of the record, I would overrule the first assignment of error and affirm the trial court's denial of Cunningham's motion to suppress as it related to the admission of the physical evidence found in Cunningham's vehicle.

{¶30} Based on my resolution of the first assignment of error, I would substantively address the second and conclude that the trial court properly suppressed Cunningham's statements made prior to receiving any *Miranda* warnings but erred by denying the motion to suppress as to his subsequent post-*Miranda* statements.

{¶31} While being handcuffed and under the physical control of the officer, Cunningham confessed to having taken the bong from the site of the robbery. Accordingly, the officer improperly questioned Cunningham upon arrest without having first informed him of his *Miranda* rights. After hearing Cunningham's self-incriminating statements, the officer testified that he immediately read Cunningham his *Miranda* warnings twice, once outside the cruiser and once inside. He was further *Mirandized* at the police station. Each time, Cunningham thereafter reiterated his prior confession.

**{¶32}** In addressing situations where the police have not administered *Miranda* warnings until after custodial interrogation has begun, the United States and Ohio Supreme Courts have queried "'whether it would be reasonable to find that in these circumstances the [subsequent] warnings could function "effectively" as *Miranda* requires.'" *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 20, quoting *Missouri v. Seibert*, 542 U.S. 600, 611-612 (2004). In other words:

> Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with *Miranda*, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment.

*Seibert* at 612.

**{¶33}** The *Seibert* court developed "a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object[.]" *Id.* at 615. Those facts include: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* The Ohio Supreme Court has recognized that "[t]he overarching concern when considering the sufficiency of a *Miranda* warning is whether it is given in a manner that effectuates its purpose of reasonably informing a defendant of his rights. The words themselves are not magical and are not curative of interrogation mistakes that occur before it is given[.]" *Farris*, 2006-Ohio-3255, at ¶ 17.

**{¶34}** In this case, the officer elicited Cunningham's confession in the first unwarned round of interrogation even as he was handcuffing the defendant. The next two rounds of

questioning occurred immediately thereafter, one outside and one inside the cruiser. The timing of these three interrogations was practically contemporaneous and effectively consisted of one continuing line of questioning. There is no indication in the record that the fourth interrogation at the police station occurred at a time significantly removed from the questioning outside and inside the police cruiser. Moreover, the record indicates that the substance of the questioning overlapped to a significant extent, eliciting repeated consistent confessions from Cunningham. In the absence of anything in the record indicating that the officer conveyed to Cunningham after the first *unMirandized* questioning that he need not respond to further questioning despite his prior confession, I would conclude that the entire line of questioning retained the taint of impropriety. There is nothing here to demonstrate that the police effectively conveyed to Cunningham via post-confession *Miranda* warnings under these circumstances that he had a choice regarding whether or not he could refrain from answering further questions. Accordingly, I would sustain Cunningham's second assignment of error.

{¶35} In conclusion, I would overrule Cunningham's first assignment of error and affirm the trial court's denial of the motion to suppress as it relates to the admission of physical evidence found in the defendant's truck. I would sustain the second assignment of error, however, and reverse the trial court's judgment as it relates to the admission of Cunningham's post-*Miranda* statements to the police.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

MELISSA J. PISZCEK, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.