[Cite as *State v. West*, 2016-Ohio-5032.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| KENNETH R. WEST | : | Case No. CT2015-0050 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                  Court of Common Pleas, Case No.
                                  CR2014-0293


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 July 18, 2016


APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

GERALD V. ANDERSON II                       DAVID A. SAMS
Muskingum County Prosecutor's Office        P.O. Box 40
24 North Fifth Street, P.O. Box 189         Jefferson, Ohio 43162
Zanesville, Ohio 43702-0189

*Baldwin, J.*

**{¶1}** Appellant Kenneth R. West appeals a judgment of the Muskingum Common Pleas Court denying his motion to suppress. Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** On September 15, 2015, shortly after midnight, Deputy Angelo, an officer of eleven and a half years, responded to an attempted robbery at the Speedway on the corner of Military and Maple in Zanesville, Ohio. Deputy Angelo took Dresden Road towards the Speedway in attempt to come across the perpetrator, as Dresden is a road commonly used by those robbing the Speedway at Military and Maple. While turning from Maple onto Dresden, Deputy Angelo noticed a Dodge pickup truck, license plate GDK 3393, attempting to turn South onto Maple from Dresden. After relaying the license plate number to dispatch, Deputy Angelo asked for a hold on the plate number in case a vehicle description came in from the Speedway robbery. Deputy Angelo was only able to note that the driver was a white male with a black t-shirt.

**{¶3}** Shortly after arriving at the Speedway, Deputy Angelo received notice that the Duke and Duchess station on Maple and Forest had also been robbed. Given his experience with robberies of both singular and successive gas stations in the Zanesville area, he knew that the next likely point of contact after the Speedway at Maple and Military would be the Duke and Duchess on Maple and Forest. From there, string robberies would carry on to the Duke and Duchess at Blue and Adair.

**{¶4}** While en route to the Duke and Duchess on Maple and Forest, Deputy Angelo noticed the same Dodge pickup, license plate GDK 3393, turning off of Forest and onto Blue, towards Adair, he became suspicious of the presence of the same vehicle

on yet another common escape route, this one from the robbery of the Duke and Duchess on Maple and Forest and in the direction of the Duke and Duchess at Blue and Adair. Deputy Angelo testified that, given the light traffic and the time between the two sightings of the Dodge, the pickup would have only been at the second location if it had stopped somewhere between the Speedway on Maple and Military and making the turn from Forest onto Blue.

{¶5} At this time, Deputy Angelo made an investigatory stop of the pickup. During this investigatory stop, the driver related to the deputy inconsistent and contradictory information. This contact led to the defendant's arrest and the subsequent search of his vehicle. Appellant was indicted on or about September 17, 2014, on one count of Robbery with a Repeat Violent Offender specification and one count of Theft. A suppression hearing was held on March 6, 2015, where the trial court ultimately denied Appellant's motion to suppress. A jury trial on July 30, 2015, returned a guilty verdict to the count of Robbery with the Repeat Violent Offender specification. Appellant was sentenced on September 8, 2015, for eight (8) years on the Robbery count and five (5) years on the Repeat Violent Offender specification, to be served consecutively, for an aggregated thirteen (13) year sentence.

{¶6} Appellant assigns one error on appeal arising from the March 6, 2015, suppression hearing:

{¶7} "THE TRIAL COURT ERRED IN NOT SUPPRESSING EVIDENCE OBTAINED FROM A WARRANTLESS STOP OF DEFENDANT-APPELLANT'S VEHICLE IN THE ABSENCE OF REASONABLE, ARTICULABLE SUSPICION."

**{¶8}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶9}** In the instant case, Appellant argues that the trial court erred in finding that the officer had a reasonable suspicion of criminal activity to justify stopping his vehicle.

**{¶10}** In order for a stop to be constitutional, it must be made on reasonable, articulable facts that, when viewed in the totality of circumstances, infer that criminal activity may be afoot. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). According to *State v. Spradlin* 5th Dist. Licking No. 11 CA 59, 2012-Ohio-1211, at ¶ 21, "an officer may 'approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' However, . . . an officer must rely upon reasonable, articulable facts and inferences indicating that criminal activity is in progress or is about to be committed." (citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889) (citation omitted). Reviewing this reliance on "reasonable, articulable facts and inferences" requires that "an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489, syllabus one (1988).

**{¶11}** Conversely, a stop is unconstitutional when it is made on merely a hunch that criminal activity is afoot. *See State v. Hill*, 2nd Dist. Montgomery No. 21604, 2006-Ohio-6118 (stating an officer executing an arrest because the vehicle and defendant were simply in an area of high crime did not rise to be more than a hunch in order to satisfy the reasonable, articulable suspicion standard); *See also State v. Cunningham*, 9th Dist. Medina No. 14CA0032–M, 2015-Ohio-4306 (stating the officer lacked any reasonable, articulable suspicion because there were no facts presented that raised an inference connecting the defendant to criminal activity).

{¶12} We engage in this totality of the circumstances test now because "[n]o judicial opinion can comprehend the protean variety of the street encounter, and we can only judge the facts of the case before us." *Terry v. Ohio*, *supra,* 392 U.S. at 15. *Terry* comprehended the complexity and minutia of evaluating the constitutionality of warrantless stops, thus giving rise to the "totality of circumstances" factors test that this Court uses today to evaluate the case before us.

{¶13} Under the "totality of circumstances" test put forth in *Bobo* and *Spradlin*, it is evident that a reviewing court must weigh a series of factors, none of which are solely dispositive, in order to determine whether a reasonable and articulable suspicion that criminal activity was afoot existed. In *Bobo*, officers made a constitutional stop and search of the Defendant because the location of the stop was known for a high number of drug transactions, the stop was made late at night, the experience of the officer and his knowledge of drug transactions, the furtive movement of the defendant, and the necessity of safety of the officer upon leaving his vehicle.  37 Ohio St. 3d at 178-79.

{¶14} In *Spradlin*, officers were dispatched to a subdivision for a robbery in progress in Pataskala, Ohio. The subdivision had one main road, which the Court found the officers had effectively blocked off. The small blockade at the subdivision stopped a green, late-model car and a brown SUV. This stop was made on the basis of the knowledge that the robbers would need to leave the subdivision along that pathway and the close time and proximity of the stop to the site of the robbery. After the vehicles had been stopped, the officers were told that the suspects committing the robbery were two white males driving a green, beat-up car and were notified of their names, one of which being the Defendant. Upon confirming that it was the Defendant driving the green, late-

model car, the suspects were removed from the vehicle. This Court found that "[t]he 'totality of the circumstances' in this case consists of a limited set of facts occurring rapidly within a few minutes. [This Court] conclude[d] that these facts, when viewed in total and taken together with rational inferences from those facts, create a reasonable and articulable suspicion that criminal activity was afoot and warranted a brief traffic stop." *Spradlin*, 2012-Ohio-1211, ¶ 30.

{¶15} Conversely, Appellant, *sub judice*, points to two distinct instances where officers were not found to have reasonable, articulable suspicion. In *Hill*, *supra,* the officer relied almost entirely on the knowledge that the vehicle was parked in an area with a high rate of drug crime. Originally, the stop was allegedly made on a taillight violation or a window tint violation, but on appeal, the court found the State failed to show that the defendant had committed either of those violations. 2006-Ohio-6118, ¶ 10. Without a reason for the stop based on an apparent crime, the stop had to be based on reasonable and articulable suspicion. However, the singular fact that the car was in an area that deals drugs, without more, led the court to find that the stop was based upon merely the officer's hunch. *Id.* at ¶ 14.

{¶16} Secondly, in *Cunningham*, it was again found that the arresting officer did not have enough to stop and seize the defendant because there was nothing to connect him to a recent robbery. 2015-Ohio-4306, ¶ 18. The officer in *Cunningham* witnessed an unfamiliar truck pull abruptly into the driveway of a home the officer was familiar with, due to his nightly patrol, which was approximately one-quarter mile away from the site of the robbery. The officer did not confirm matching descriptors prior to the stop and was not relying on his experience with robberies to evaluate behavior. The officer was admittedly

unsure of who the driver of the vehicle might have been, whether it was "the robbery suspect, . . . somebody there to rob the house, . . . someone who had just gotten home drunk, you know, and passed out at the wheel." *Id.* at ¶ 19. This lack of certainty, coupled with the lack of other relevant and reasonable, articulable factors showed that the officer possessed merely a hunch when he stopped the defendant. *Id.* at ¶ 20.

{¶17} In the instant case, Deputy Angelo had the requisite reasonable, articulable suspicion necessary to effectuate the stop of Appellant's vehicle given his experience with singular and successive local gas station robberies. Further, the presence of the same vehicle, with Appellant inside, on two separate occasions on common avenues of travel for those committing successive gas station robberies within close proximity to and around the time of the attempted and successful robberies. Much like the experience, proximity, and time factors seen in *Bobo* and *Spradlin*, this case, too, presents a series of factors where any one of them may only give rise to a hunch, but when evaluated together, produce the reasonable, articulable suspicion required for a stop. Specifically, the stop was based upon (1) Deputy Angelo's eleven and a half years of experience with gas station robberies, both successive and singular, (2) the closeness of proximity and time of the Dodge pickup to the first, attempted robbery, (3) the nexus of proximity and time of the same Dodge pickup to the second, successful robbery, and (4) the knowledge that the same Dodge pickup would have only been spotted at the second location if it had briefly stopped somewhere between where it was spotted after the first robbery and where it was spotted after the second robbery.

{¶18} Appellant misplaces his confidence in *Hill* and *Cunningham*, as both of those cases outlined situations where the officer prematurely made a stop without enough

factual information to draw a reasonable inference. The officer in *Hill* attempted to justify the stop solely on her knowledge of the area as being rife with drug crime and the officer in *Cunningham* had no way of tying the potentially suspicious vehicle to the crime for which the stop was made, admitting there were several reasons why he approached the vehicle, most of which were not related to criminal activity. Here, Deputy Angelo not only knew the area and understood how gas station robberies are executed, but he waited to gather more information before stopping the Dodge pickup. If he had stopped the Dodge immediately after the first robbery on a road travelled by past perpetrators, this case would more closely align with *Hill,* as the stop would have been based solely on the fact that the pickup was in a specific location, or *Cunningham*, as there would be no reasonable inferences connecting the vehicle to the initial, attempted robbery. But because of Deputy Angelo's prudence, he waited, asked dispatch to hold the plate, and sought to gather more information. Upon witnessing the same vehicle appearing in such close time and proximity to the second gas station, Deputy Angelo gained enough factual information to draw an inference in order to create a reasonable and articulable suspicion that the Dodge pickup and its driver may be involved with criminal activity.

{¶19} "The Fourth Amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." *Bobo, supra,* at 180 (citing *Adams v. Williams*, 407 U.S. 143, 145-146 (1972)) (citations omitted). Here, we are not asking that Deputy Angelo had enough information to meet the threshold of probable cause, all that we seek is proof that Deputy Angelo

could articulate reasonable suspicion of the vehicle in question, a lower threshold that this Court finds he met through his experience, prudence in gathering information, and identification of the suspect vehicle in close proximity and time to two robberies in Zanesville, Ohio. Under the totality of circumstances, we conclude that the facts gathered and articulated by Deputy Angelo and Appellee, when aggregated and taken with rational inferences, create a reasonable and articulable suspicion that criminal activity was afoot and warranted the brief traffic stop of Appellant, which gave rise to his arrest, indictment, and conviction.

**{¶20}** The assignment of error is overruled.

**{¶21}** Accordingly, the judgment of the Muskingum County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Farmer, P.J. and

Delaney, J. concur.